Birchard, C. J.
This is a writ of error to reverse a judgment of the court of common pleas of Greene county. The action was ejectment, and judgment was rendered in favor of the plaintiff. A motion for now trial was made, which being overruled, a bill of exceptions was taken, presenting all the proof offered in evidence upon the trial. Three errors are assigned which may be considered as one. Did the court err in overruling the motion for a new trial? The plaintiff claimed under a patent of the United States, bearing date February 6, 1797, issued on a warrant for the military services of Major-General Horatio Gates, for 2,500 acres of land, situate between the Little Miami and Scioto rivers, “ as by survey bearing date March 8, 1793.” The description of this survey is such, and the boundaries are so well ascertained; that no difficulty arises upon any part of it, except the last or closing line, *which, starting from the fourth corner called for in the patent, reads thus, “thence south forty-five degrees ■east, 820 poles, passing McAdams' corner, at 287 poles, and with his line crossing a large branch of Cmsar’s creek, to the beginning.”
This line, if run directly from the fourth call to the place of beginning, would pass some 28 poles from McAdams’ corner, and would leave a vacancy of 28 rods in width, opposite McAdams’ corner, and terminating at points'at each end of the line. This tract is the subject matter of controversy. For this the plaintiffs hold title under a patent, issued to Galloway, if the land is not embraced in the Gates’ survey.
The whole difficulty turns upon the point whether the boundary ■of the Gates’ patent is identical with McAdams’ line, and whether the call for his corner is a controlling call of the patent. By reference to the patent and entry of McAdams, we find that his ■entry is older and his survey junior to the Gates’ survey. The entry reads, “ beginning at said McAdams’ north corner of his ■entry, No. 1,995, thence south 45 degrees east 533J- poles, thence north 45 degrees east, at right angles for quantity, 1,333J- acres.” The survey of this entry was made April 10, 1793, one month later than the survey of Gates, and is described as beginning at two elms, an ash and white oak tree, east corner to the survey, thence north 45 degrees east 400 poles, crossing a branch at 350 poles, to two black oaks and a dog-wood. From the other evidence disposed by the bill of exceptions, it appears that the disputed line •was an open line at the date of Gates’ survey, and was never run *361 until surveyed in 1806, by direction of Col. Elzy, the then owner of the land, who run in a direct line from the fourth corner to the first or beginning corner; thus departing from the McAdams’ corner and lino throughout this course. This line Elzy recognized as the time one, while he owned the land. It is also evident that in surveying the McAdams’ entry, the surveyor was governed by course and distance, and.that the corner fixed by the surveyor .and recognized in his patent, and now ascertained *as the corner, 28 poles distant from the right line run between Gates’ ■first and fourth corners, was then a mere ideal corner, having at that time neither natural nor artificial objects to define its locality. It is equally evident that had the survey of McAdams been made according to the entry, there could havo existed no vacancy botween the two surveys. But by some means, the line of survey •diverged from the true corner called for by the entry, and we find the shape of the tract varying from a rectangle, and creating a vacancy, which the patent of Galloway, under which plaintiffs in error claim, might well appropriate.
The survey of McAdams merged his entry, and although he might have placed his corner and line so as to correspond with the right line of Gates, extended between his first and fourth •corners, as surveyed and recognized by Elzy, yet not having done so, the oonsequence is that his title can not cover more than his ■survey embraced, and if the Gates’ patent can be made to embrace up to Adams’ line by reason of his call for his corner, it would then follow that it covers ground not embraced by the survey or descriptive calls, as they originally existed, but in consequence of the acts subsequently done by McAdams’ surveyor. To test the soundness of a rule that would work such a result, let the proposition be reversed, by supposing McAdams to have surveyed without his entry, and to have encroached upon and included part of the survey of Gates. Would he be bound to submit to such subsequent change of location and suffer his boundary to bo thus changed ? Or suppose that McAdams’ line had never been run at all, would it follow that Gates’ lino was subject to change, from the line actually intended in March, 1793, and that it could not be ascertained without discovery of a call having no existence ? We think not. It necessarily follows, then, that the calls in a deed for objects which had no existence at the time are mistaken calls which should have been rejected, and should not have been *362 allowed to control course and distance. From the view we have taken a new trial should have been granted.
*There is another ground upon which the plaintiffs were entitled to a verdict. The proof shows that the line of Gates’ patent was unsurveyed until Elzy surveyed it, and marked it as now claimed by plaintiffs. The corner of McAdams was then known, and its distance from the line measured by the surveyor. Notwithstanding, Elzy claimed only to the line actually run. He treated the land now in dispute as vacancy; suffered Galloway to enter, survey, and procure his patent for it as government land not embraced within the calls of the Gates’ patent. After that he lay by for many years, and suffered possession to. be taken, and improvement to be made, under the patent, never questioning the boundary while he held and possessed the legal title. This conduct should, in our opinion, estop him and those holding under him from setting up his title, to interfere with a boundary by himself established, and thus defeat a title which otherwise would or might not have been obtained.
It is the opinion of the court, therefore, that the title obtained under the patent to Galloway was a valid defense, and should have prevailed.
In overruling the motion for a new trial, the court below erred, and their judgment must be reversed.