Okey, J.
The act of 1871 (68 Ohio L. 106), amendatory of the homestead act of 1850, in force when the judgment recited in the vendi. ex. was rendered, provided as follows: “ Every widower having an unmarried minor child or children residing with him as part of his family,, and every widow, shall have the benefit of this act.” This act was repealed by the act of 1878 (75 Ohio L. 597, 692), which was in force when the vendi. ex. was issued and the demand for the homestead was made. The latter provision has been incorporated into the Revised Statutes, § 5435, and properly punctuated, is as follows: “ Husband and wife living together, a widow, or a widower living with an unmarried 'daughter or unmarried minor son, may hold exempt from sale, on judgment or decree, a family homestead not exceeding one thousand dollars in value.” That courts will repunctuate if necessary to render the meaning clear, see Hamilton v. Steamboat Hamilton, 16 Ohio St. 428; 1 Ohio, 385; 23 Ohio St. 140.
Where one or more sections of a statute are repealed and re-enacted in a different form, the fair inference is, in general, that a change in meaning was intended ; though even in such a case the intention may have been to correct a mistake or remove an obscurity in the original act, without changing its meaning. But where all the general statutes of a state, or all on a particular subject, are revised and consolidated, there is a strong presumption that the same construction which the statutes received, or, if their interpretation had been called for, would certainly have received, before revision and consolidation, should be applied to the enactment in its revised and consolidated form, although the language may have been changed. Gardener v. Woodyear, 1 Ohio, 170, 176; Swasey v. Blackman, 8 Ohio, 5, 20; Ash v. Ash, 9 Ohio St. 383, 387; Tyler v. Winslow, 15 Ohio St. 364, 368; Williams v. The *338 State, 35 Ohio St. 175; Jackson v. The State, 36 Ohio St. 281, 286; The State v. Com., 36 Ohio St. 326: The State v. Vanderbilt, 37 Ohio St. 590, 640; Bishop’s Written Laws, § 98. Of course, if it is clear from the words that a change in substance was intended, the statute must be enforced in accordance with its changed form. lb.
The commissioners appointed under the act of 1875 (72 Ohio L. 87) were required to revise and consolidate the statutes of a general nature, and make report to the general assembly. They determined that the best way to perform that duty was to arrange all the general laws under proper heads, and report the same to the general assembly in the form of a bill. Their power to change was very limited. It was confined to “making alterations to reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive a form as is consistent with the clear expression of the will of the general assembly.” Their power to change did not extend to matters of substance, like the right to a homestead. The commissioners were vested with no legislative power. They could recommend, and that was all; and the bill which they prepared obtained its vitality solely from its adoption by the general assembly. Changes were undoubtedly made in the bill by the general assembly, but they were not numerous. That the rule which I have stated as applicable to revisions should be applied to the Revised Statutes, can admit of no doubt; and, applying the rule, it is clear a widow is entitled to a homestead, although she may not be so fortunate as to live with, or even have, “ an unmarried daughter or unmarried minor son.”
There is another question presented on the record, but as it has not been argued, I will do no more than state it. No one doubts that under the act of 1871, the widow would have been entitled to the homestead. When the judgment was rendered and the lien attached (May 6, 1878), that act was in force, and it remained in force until it was repealed by the act of 1878, above montioned. (75 Ohio L. 597, 692, 800, 821.) Assuming that a statute securing a homestead, in force when a judgment is rendered, may, without infringement of the *339 constitutional provision as to retroactive laws (Const, art. 2, § 28; Rev. Stats. § 99, note; Bull v. Conroe, 13 Wis. 233; Cooley’s Const. L. 474; cf. Finley v. Dietrick, 12 Iowa, 516), be repealed, so as to deprive, .the debtor of such exemption,— still, even in cases where such constitutional inhibition does not apply, if it be doubtful whether it was intended that the new act should operate retrospectively, the doubt should be resolved against such operation. Bishop’s Written Laws, § 82. Or, as expressed by White, J., in Bernier v. Becker, 37 Ohio St. 72, 74: “A statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.” Besides, by force of the saving clause in the act of 1878 (75 Ohio L. 821), the act of 1871 may control. Indeed, the execution may have been in the hands of the officer when the act of 1878 took effect. The repealing and saving clause, so far as it is applicable, is as follows: “ This act shall take effect and be in force from and after the first day of September, 1878 ; but process then issued shall be executed, jurors then selected may be drawn and impaneled, actions, suits and proceedings then pending shall be conducted to final judgment, and liens of judgments and decrees then existing shall continue and be preserved, in all respects, as if this act had not been passed.” But it is unnecessary to express any opinion on the question whether the case is controlled by the act of 1871, for the i*eason that it is disposed of on the other ground.

Judgment reversed.

Upson, J., having been of counsel in the case, did not participate in the decision.