Follett, J.
When we understand the object of the statute relating to animals running at large, the practical application of its various provisions is not difficult. The end sought is not to furnish means for personal spite, but is to prevent damage being done by such animals. The provisions of the statute will secure the safety of the animals, and will prevent damage being done by them. The statute provides that the person or officer, who acts in the matter, shall be compensated for his labor and care and food furnished, and that all shall be paid for by the owner of the animals, or by those having the care of them ; but such person or officer should act in good faith and must follow the strict provisions of the statute. Some of these provisions are as follows :
Revised Statutes, section 4202. “No person or corporation, being the owner or having the charge of any.horses, mules, cattle, sheep, goats, swine, or geese, shall suffer them to run at large,” etc.
Section 4207. “A person finding an animal mentioned in section 4202, at large, contrary to the provisions of this chapter may, and any constable of any township, or marshal or constable of any city or village, on view or information, shall take up and confine the same forthwith, giving notice thereof to the owner, if known, and, if not known, by posting notices describing such animals therein, in at least three public places within the township;” etc.
Section 4208 provides as to fees to be paid by the owner.
■Section 4209. “The trustees of any township may procure or construct an inclosure or pound, wherein animals *13 taken up under the provisions of this chapter maybe confined ; and the trustees may appropriate from the township funds an amount not exceeding one hundred dollars for that purpose. If the trustees of any township fail to build or erect such pound or inclosure, any owner or lessee of land in the township where the stock is found running at large, contrary to law, may detain or keep the same in any field, pen, or stable, which shall be the same in effect as though the stock were impounded in a pound erected by the township trustees, but no stock running at large, contrary to law, shall be taken up and confined in any private inclosure where township pounds have been provided according to law.”
The pleadings, though not in the best form, show that plaintiff owned the swine, and that defendant held them shut up in a private pen five days, and until plaintiff replevied them. The ownership being in the plaintiff, the possession by defendant should be accounted for. Plaintiff avers that such possession was illegal. He admits that he did suffer the swine to run at large, but he claims that if defendant found them running at large, he could not take them up and legally confine them in his private inclosure, because, if rightly taken up, a township pound had been provided wherein they should have been confined ; and that defendant not only put them into his private inclosure, but gave no notice thereof to plaintiff, the owner.
I. As to the notice, the statute provides, section 4207, “ A person finding an animal mentioned in section 4202 at large contrary to the provisions of this chapter may, and any constable . . . shall take, up and confine the same forthwith, giving notice thereof to the owner,” etc. The admissions and evidence show that defendant took up the swine on Tuesday, the 10th, and he gave no notice of same to plaintiff until Monday, the 16th ; that'plaintiff did not hear of this taking up until Friday, the 13th. But the defendant seeks to justify this delay, by the statute as punctuated ; as in the statute the comma is placed after the word “ forthwith,” and not before it. But this strict *14 grammar would not justify Ms position even if we limit the word “ forthwith ” to the words, “ take up and confine the same;” for the word “giving” is present and not future in time; and the time when he did “take up and. confine the same,” is the time when the “ giving notice thereof to the owner,” should be done.
But such a limitation is not the legislative intent. Punctuation may aid in arriving at the nieaning of a statute, but does not control.
Ancient inscriptions and writings show that words were grouped together without break or punctuation mark, the location and form of the words being the only indications of the meaning. The use of spaces and marks was adopted very slowly, but mostly since the beginning of the sixteenth century.
In Barrow v. Wadkin, 24 Beav. 327, 330, it was said that, “It seems that in the Rolls of Parliament the words are never punctuated,” and that punctuation is not allowed to throw light on printed statutes in England. In Cushing v. Worrick, 9 Gray, 382, it was held that, “Punctuation is not to be regarded in construing a statute.” • Punctuation has not arrived at perfection anywhere ; but a better rule was laid down in Ewing v. Burnet, 11 Pet. 41, where it was said, “ Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail; but the court will first take the instrument by its four corners, in order to ascertain its true meaning. If that is apparent on judicially inspecting it, the punctuation will not be suffered to change it.” Also in Gyger’s Estate, 65 Pa. St. 311, the court held: “ In construing a statute, the plain common-sense interpretation of the words should be adhered to, rather than to apply refined technical rules of grammar.” “ Punctuation in a statute should not rule.” In Pancoast v. Ruffin, 1 Ohio, 385, 386, the court say, “ Statutes should be so construed as to give effect to the intention of the legislature, and if possible, render every section and clause effectually operative.” Speaking of a construction claimed by a party, *15 the court also say in this last case: “ This construction is founded upon a mere grammatical criticism, which is never received to change or control the intention of the legislature, where that intention is otherwise clearly expressed. Something may depend upon punctuation in the statute book, which may be incorrect, and ought never to vary the true sense.” And there they disregarded and left out a comma.
In Hamilton v. Steamboat Hamilton, 16 Ohio St. 428, 432, Day, J., says: “ Courts will, however, in the construction of statutes, for the purpose of arriving at the real meauing and intention of the law makers, disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statnte.” And this is followed in Shriedley v. The State, 23 Ohio St. 140 ; and in Allen v. Russell, 39 Ohio St. 337, Okey, J., says: “ The courts will repunctuate if necessary to render the meaning clear.”
IT we remove the comma that stands after the word “ forthwith,” and disregard it, or place it before that word, the meaning is clear and entirely consistent with every part of this statute, and clearly shows the true intent applies forthwith to “ giving notice thereof to the owner.” This view is strengthened by a reference to Revised Statutes, section 6628, relating to strays; and to section 6638, relating to stallions. So the meaning of the sentence is as though written, take up and confine the same forthwith giving notice thereof, or take up and confine the same, forthwith giving notice thereof, etc.
"What the defendant did as to the notice were questions of fact; and the jury, under proper instructions, were the triers of such facts. Rev. Stats., sec. 5130.
In this case the court erred in not permitting the jury to pass on this issue. Hollenbeck v. McMahon, 28 Ohio St. 1; Acton v. Knowles, 14 Ohio St. 18.
II. As to the pound, the statute provides, Rev. Stats. § 4209, “no stock running at large, contrary to law, shall be taken up,"and confined in any private inclosure where township pounds have been provided according to law.”
*16 Plaintiff in his petition averred there was then in that township a public pound: and defendant specifically denied that averment. On the trial plaintiff offered Myers as a witness, “ to prove by the witness that the trustees of Adams township and the authorities of the village of G-reen Springs had each contributed money toward the erection of a pound, to be used in common, both by the township and village; that out of money so contributed by the village and township, a pouncl for the village and township had been in fact constructed,” which testimony was excluded by the court. This was not an offer of testimony to contradict any record, but the offer of testimony as to a material fact at issue in the case. Had the records shown all that records could show in such a case, the testimony would be competent. But here the records seem to be silent as to this matter, and to what Myers knew about the facts he could testify. See Westerhaven v. Clive, 5 Ohio, 136. We ai’e not told why the corn! excluded the offered testimony, or why the court instructed the juiy to return a vei’dict against the plaintiff and for the defendant, except that the defendant objected to the testimony, and moved the court so to instruct the jury. In so ruling and instructing thex’e was error to the prejudice of the plaintiff.

Judgment reversed and cause remanded.