In the Matter of the Application of the BROOKLYN ELEVATED RAILROAD COMPANY to Acquire Title to Lands of CHARLES U. WING.

Where the charter of a railroad corporation contained a provision requiring its road to be commenced and completed within times specified, and that in case of default it should "forfeit the rights acquired by" it under the acts of incorporation, *held*, that the provision did not *ex proprio vigore* put an end to the corporate life in case of default, but simply exposed it to proceedings on behalf of the state to establish and enforce the forfeit-ure, and until the state thus intervened a private individual might not set up the forfeiture or in any way challenge the corporate existence, and, therefore, the fact that the company had made default, was no answer or defense in proceedings on the part of the company to acquire title to lands for the purposes of its road.

The distinction pointed out between such a case and one where the charter provides that in case of default the "corporate existence and powers shall cease," or that "all the powers, rights and franchises * * * granted shall be deemed forfeited and terminated."

Statement of case.

*In re B. W. & N. R. Co.* (72 N. Y. 245; 75 N. Y. 335); *B. S. T. Co.* v. *City of Brooklyn* (78 N. Y. 524), distinguished.

The act incorporating the petitioner herein contained a provision (§ 10, chap. 585, Laws of 1874) that the corporation shall possess the powers and privileges and be subject to all the provisions of the General Railroad Act (Chap. 140, Laws of 1850) and the acts amendatory thereof, except so far as the provisions of said acts "are modified by or are inconsistent with the provisions of this act." *Held*, that the provision of the amendatory act of 1867 (Chap. 775, Laws of 1867), which provides that if a corporation formed under the general act shall not within times specified begin and complete its road, "its corporate existence and powers shall cease," was not applicable, as it was inconsistent with the provisions contained in said act of incorporation, fixing the times and declaring the consequences of default.

The charter provided for the construction of an elevated railroad through certain streets in the city of Brooklyn. The original act of incorporation provided (§ 5) "that said road shall be constructed on iron columns, placed on each side of the street, in a line with the curb-stones," on foundations as prescribed; "said foundations and the location of them to be subject to the approval of the chief engineer of the board of city works of the city." It also provided that "iron girders, not more than thirty-six feet in length, shall be placed across the streets and avenues." Some of the streets were wider than thirty-six feet between the curbs. The charter was amended (Chap. 422, Laws of 1875) so as to read that the columns shall "be placed on each side of the streets,   *   *   *   avenues and roadways, as near as practicable, on a line parallel with the curb-stones," and instead of using transverse girders the company was authorized, at its option, to use longitudinal ones. The rows of columns in one of the streets were located on a line with the curbs, but eight feet distant therefrom; the trial court found that they were placed as near as practicable to the sides. It did not appear that the city authorities objected to the location or that the land owners made any objection until after the road was built and in operation. *Held*, that the object of the amendment was to modify the rigid provisions of the original act which requires absolutely that the columns should be placed on the sides of the streets; and that the requirements of the charter were substantially complied with.

Punctuation in a statute will not control its construction, and where the legislative sense requires it a comma may be transposed.

(Argued December 15, 1890; decided February 6, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made June 24, 1890, which affirmed an order of Special Term appointing commissioners of appraisal.

The nature of the proceedings and the facts, so far as material, are stated in the opinion.

*Edward W. Shepard* for appellant. The petitioner possesses no right to the exercise of its claimed franchises. Its road was not commenced within the time limited by law. (Laws of 1874, chap. 585, § 12.) The road of the petitioner was not completed within the time limited by law. (*In re B. W. & N. R. Co.*, 72 N. Y. 246, 250.) Both the failure to commence and the failure to complete the railroad within the time limited by law, forfeited the rights acquired by the company under the original act, including the right to condemn the appellant's property. (*In re B. W. & N. R. Co.*, 72 N. Y. 245; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 524; 1 Abb. Law Dict. 515; Anderson's Dict. of Law, 468; 1 Burrill's Law Dict. 646; *U. S.* v. *Bags*, 8 Cranch. 398; *Fontaine* v. *P. Ins. Co.*, 11 Johns. 293; *Kennedy* v. *Strong*, 14 id. 128; *Amory* v. *McGregor*, 15 id. 24; *Henderson's Case*, 14 Wall. 44.) The petitioner does not possess the right to take the property it proposes to take, that is, the easement for the road now constructed and operated by it. (Laws of 1874, § 5; Laws of 1875, chap. 422; *G. E. R. Co.* v. *Anderson*, 3 Abb. [N. C.] 434; *In re K. C. E. R. Co.*, 112 N. Y. 48, 49; *People* v. *K. & M. T. Co.*, 23 Wend. 193; *In re U. E. R. R. Co.*, 113 N. Y. 275; *In re M. T. Co.*, 111 id. 588, 601; *In re S. B. R. R. Co.*, 119 id. 141; *In re P. B. Co.*, 108 id. 483.) The petitioner has not shown any necessity for the property, it proposes to acquire. (*N. G. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *R. & S. R. R. Co.* v. *Davis*, 43 id. 137; *In re S. I. R. T. Co.*, 103 id. 251.) The petitioner has not shown an inability to agree with the respondent for the purchase of the property which it proposes to take. (*In re Marsh*, 71 N. Y. 315; *In re L. & B. R. R. Co.*, 77 id. 557, 563.) The petitioner has failed to invest the court with jurisdiction in making and proving the necessary allegations in its petition. (*In re R. E. R. Co.*, 123 N. Y. 351.)

*George Hoadly* for respondent.    Appellant cannot challenge
the corporate existence of the Brooklyn Elevated Railroad
Company or its right to exercise the power of eminent domain.
(Laws of 1879, chap. 350; Laws of 1880, chap. 459; Laws of
1881, chap. 388; Laws of 1885, chap. 535; *In re N. Y. E. R.
Co.*, 70 N. Y. 327; *In re K. C. E. R. R. Co.*, 105 id. 97;
*Day* v. *O. & L. C. R. R. Co.*, 107 id. 129; *Moore* v. *B. C.
R. R. Co.*, 108 id. 98; Morawetz on Corp. § 1015; *State of
Louisiana* v. *Fagin*, 22 La. Ann. 545; *People* v. *M. Co.*, 9
Wend. 351; *Bank of Niagara* v. *Johnson*, 8 id. 645; *In re
Presbyterian Church*, 7 How. Pr. 476; *O. R. R. Co.* v. *Bald-
win*, 57 Cal. 160; *C. & O. C. Co.* v. *B. & O. R. R. Co.*, 4
G. & J. 1; *Briggs* v. *C. C. S. C. Co.*, 137 Mass. 71, 73, 74;
*W. F. Co.* v. *Kittridge*, 5 Sawyer, 44; *State of Ohio* v. *P. &
O. C. Co.*, 23 Ohio St. 121; *State* v. *B. Assn.*, 35 id. 258;
*Farnsworth* v. *M. & P. R. R. Co.*, 92 U. S. 49; *McMicken*
v. *U. S.*, 97 id. 204; *Van Wyck* v. *Knevals*, 106 id. 360; *S. L.,
I. M. & S. R. R. Co.* v. *McGee*, 115 id. 469; *P. R. Co.* v.
*United States*, 124 id. 129, 130; *Clarkson* v. *H. R. R. R. Co.*,
12 N. Y. 306; *Astor* v. *N. Y. A. R. Co.*, 1 Ry. & Corp. L. J.
182.)    There is no provision for *ipso facto* forfeiture in the
Brooklyn Elevated Railroad Company's charter.    (76 N. Y.
327; *People* v. *Bank*, 6 Cow. 219; *People* v. *B. & R. T. Co.*,
23 Wend. 222; *State* v. *O. B. & L. Assn.*, 35 Ohio St. 258;
*State* v. *M. B. Assn.*, 42 id. 579; *People* v. *U. Ins. Co.*, 15
Johns. 358; *U. Ins. Co.* v. *Scott*, 8 Cow. 721; 2 Kyd on Corp.
407; *People* v. *R., etc., T. & B. Co.*, 20 Barb. 526; Code
Civ. Pro. § 1948.)    The Brooklyn Elevated railroad was com-
menced and completed within the time required by law.    (*O.
R. R. Co.* v. *Baldwin*, 57 Cal. 160; *In re N. Y. E. R. R.
Co.*, 70 N. Y. 327.)    The Brooklyn Elevated railroad was con-
structed in accordance with the requirements of law.    (*People*
v. *W. T. R. & B. Co.*, 47 N. Y. 586.)

*F. R. Minrath* for respondent.    The charter of the peti-
tioner did not lapse by any failure to begin or complete said
railroad within the statutory period, nor can such an objection

be raised or taken advantage of by a property owner in a condemnation proceeding. (*In re K. C. E. R. R. Co.*, 105 N. Y. 97.) The structure as erected on Grand avenue is a compliance with the provisions of the act of incorporation of this company, and the appellant's objection and exception to the allowance of condemnation proceedings, based upon such non-compliance, should not be sustained. (*People* v. *Lacombe*, 99 N. Y. 43; *P. L. Co.* v. *Brundage*, 13 How. Pr. 448; *Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Wyckoff* v. *Meyers*, 44 id. 143; *Gustaveson* v. *McGay*, 12 Daly, 423; *R. R. Co.* v. *Stoddard*, 6 Minn. 150; *F. R. Y. W. Co.* v. *R. R. Co.*, 5 Allen, 221; *B. & P. R. R. Co.* v. *R. R. Co.*, 1 Gray, 341; *Parke's Appeal*, 64 Penn. St. 137; *In re K. C. E. R. R. Co.*, 105 N. Y. 97; Angell & Ames on Corp. §§ 635, 636; *Fire Dept.* v. *Kip*, 10 Wend. 266; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1, 43; *B. C. R. Co.* v. *Woodman*, 2 Greenl. 404; *Denike* v. *N. Y. & R. L. Co.*, 80 N. Y. 599; *In re N. Y. E. R. R. Co.*, 70 id. 327, 328; *Eaton* v. *Aspinwall*, 19 id. 119, 121; *B. & A. R. R. Co.* v. *Cary*, 26 id. 75, 77, 78; *People* v. *A. & V. R. R. Co.*, 24 id. 261; *Towar* v. *Hale*, 46 Barb. 361; *Foot* v. *Stiles*, 57 N. Y. 399; *In re B. R. R. Co.*, 72 id. 245; *In re B. R. R. Co.*, 75 id. 335; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 id. 121; *People* v. *Kelly*, 76 id. 475; *Horton* v. *Parsons*, 36 Hun, 42, 45; *B. C. R. R. Co.* v. *Furey*, 4 Abb. [N. S.] 364.) Should the court entertain any doubt on the question, we submit that the various statutes in this state subsequent to a violation of the condition prescribed, to wit, chapter 458 of the Laws of 1880, chapter 338 of the Laws of 1881, and chapter 339 of the Laws of 1885, were a waiver by the legislature of the conditions and a recognition of the corporation in the manner in which it actually existed. (*K. C. Co.* v. *K. & O. C. Co.*, 7 Blatchf. 407; *White* v. *Ross*, 4 Abb. Ct. App. Dec. 589; *B. R. & U. R. R. Co.* v. *Barnard*, 31 Barb. 258, 260; *White* v. *Coventry*, 29 id. 305, 311; *People* v. *K. & M. T. R. Co.*, 23 Wend. 193, 211; *Basshor* v. *Dressel*, 34 Md. 503, 511.)

EARL, J.    This is a proceeding, under the provisions of the General Railroad Act, to acquire real estate interests in Grand avenue in the city of Brooklyn from Charles U. Wing for the purpose of the Brooklyn Elevated railroad.    Issue was taken upon the allegations of the petition, and the matter was brought to a hearing before a justice of the Supreme Court, who, after hearing the evidence, made findings of fact and of law, hold- ing that the petitioner had made a case for the appointment of commissioners to ascertain and appraise the compensation to be paid to Wing for his real estate interests taken; and an order was made and entered appointing such commissioners. From that order Wing appealed to the General Term and then to this court.

The Brooklyn Elevated Railroad Company derives its cor- porate life from the following acts of the legislature: Chapter 585 of the Laws of 1874; chapter 422 of the Laws of 1875; chapter 350 of the Laws of 1879; chapter 459 of the Laws of 1880; chapter 338 of the Laws of 1881, and chapter 539 of the Laws of 1885; and its road was built through Grand avenue and in operation there at the time when this proceed- ing was instituted.    The acts required that the road should be commenced and completed within times specified, and in default thereof that it should "forfeit the rights acquired by" it under the acts.    We will assume that it did not commence or complete its road within the time specified, and yet we reach the conclusion that the claim of Wing that it had lost its corporate existence and its "rights acquired" under the acts, is unfounded.    What is meant by "rights acquired" under the acts?    We answer, all its rights, including its right to be a corporation.    It could not, within the meaning of the act, forfeit all its rights and still be a corporation.    A corporation without rights, without legal capacity to do anything, not even to acquire rights, is inconceivable.    What was plainly meant is that the corporation should, in the event mentioned, forfeit its charter, and that included all the rights acquired by it under the acts from which it derived corporate existence; and thus the legislative meaning is the same as if the language used had

been "forfeit its charter" or its "chartered rights." For the non-performance of conditions specified, such language has never been held *ex proprio vigore*, to put an end to corporate life. By such non-performance a corporation is not, *ipso facto*, dissolved or deprived of its corporate existence or corporate rights, but it is simply exposed to proceedings, on behalf of the state, to establish and enforce the forfeiture. The state which gave the corporate life may take it away. The state which imposed the conditions may waive their performance, and the corporate life may run on until the state, by proper proceeding, intervenes and enforces the forfeiture. Until the state does thus intervene, a private individual cannot set up the forfeiture or in any way challenge the corporate existence with its full vitality. The authorities for these views are numerous, and uniform both in this country and England. (*State of Louisiana ex rel. Atty.-General* v. *Fagan*, 22 La. Ann. 545; *Bank of Niagara* v. *Johnson*, 8 Wend. 645; *People* v. *Pres. and Directors of the Manhattan Co.*, 9 id. 351; *In the Matter of the New York Elevated R. R. Co.*, 70 N. Y. 327; *In the Matter of the Kings Co. Elevated R. R. Co.*, 105 id. 97; *Day* v. *Ogdensburgh & Lake Champlain R. R. Co.*, 107 id. 129; *Moore* v. *Brooklyn City R. R. Co.*, 108 id. 98; *Farnsworth* v. *Minnesota & Pacific R. R. Co.*, 92 U. S. 49; *Van Wyck* v. *Knevals*, 106 id. 360.)

Our attention has been called to many cases arising under the revenue laws of our country which provide for forfeiture of goods on account of offenses against such laws, wherein, as claimed, it was held that the forfeiture of title in such cases takes effect from the commission of the offense without legal proceedings. Those cases, and others involving violations of the police laws, may stand upon a peculiar policy, and, in any event, they are not authority in the case now here. The learned counsel for the appellant, with all his industry, has not been able to find a single case involving the forfeiture of corporate rights and franchises, where such language as we have here has been held sufficient to work out a self-executing forfeiture without the intervention of the courts or the legislative power.

The general rule established by the authorities above cited was fully recognized in *In re Brooklyn, Winfield & Newton R. Co.* (72 N. Y. 245; *S. C.* 75 id. 335), and in *Brooklyn Steam Transit Co.* v. *City of Brooklyn* (78 id. 524). For the non-performance of conditions specified in the former case it was provided that " the corporate existence and powers shall cease," and in the latter case, that " this act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated." We held that this clear and emphatic language indicated a legislative intent that the corporate life should, for the defaults mentioned, come to an end, and not merely be exposed to forfeiture by proceedings on behalf of the state. These decisions, we think, stand well upon reason. But they are border cases, and the doctrine laid down in them should not be applied to cases where the legislative intent of a self-executing forfeiture is not equally plain. An undue extension of the doctrine would imperil the vested rights of individuals, and in many cases might prejudice the interests of the public.

We have found but one similar decision, that made in *Oakland Railroad Co.* v. *Oakland, Brooklyn and Fruit Vale Railroad Co.* (45 Cal. 365), where the language to be construed was, " shall utterly cease and be forfeited." Similar language was held not to provide for *ipso facto* forfeiture in *Chesapeake & Ohio Canal Co.* v. *Baltimore & Ohio R. R. Co.* (4 Gill & Johnson, 1) ; *Briggs* v. *Cape Cod Ship Canal Co.* (137 Mass. 71), and *Wallamet Falls C. & L. Co.* v. *Kittridge* (5 Sawyer, 44).

It was provided in section 10 of the act of 1874, in which the life of the Brooklyn Elevated Railroad Company originated, that the corporation thereby created should possess all the rights, powers and privileges, and be subject to all the provisions of the General Railroad Act of 1850, and the several acts amendatory thereof, " except as far as the provisions of said acts and amendments are modified by or are inconsistent with the provisions of this act." Among such amendatory acts is the act, chapter 775 of the Laws of 1867, in which it is

provided that, " if any such corporation formed under the general act shall not, within five years after its articles of association are filed and recorded, begin the construction of its road and expend thereon ten per cent of the amount of its capital, or shall not finish its road and put it in operation within ten years from the time of filing its articles of association as aforesaid, *its corporate existence and powers shall cease.*" In *The Matter of the Brooklyn, Winfield and Newton Railway Co.* we held that the language of this act, which we have italicised, provides for a self-executing forfeiture, and if, therefore, as claimed by the learned counsel for Wing, the provision quoted is made applicable to this corporation, his contention that it has lost its corporate existence and its right to institute this proceeding is well founded. But the provision of the General Railroad Act is inconsistent with that contained in the act of 1874, and as to this corporation is modified by that act which provides a particular time for the commencement and completion of the road authorized thereby, and the consequence of a failure to perform the conditions. The whole subject is provided for by that act, and the other acts relating to this corporation, and hence there is no room for the operation of the provision of the act of 1867 above quoted, and it can have no application to this road.

We have, therefore, reached the conclusion that this corporation has not lost its corporate existence or its right to institute this proceeding. We have assumed, as sufficient for the present purpose, that the corporation did not commence or complete its road within the times required, and have not, therefore, deemed it important to consider the able argument submitted, on behalf of the corporation, to show that it did comply with the conditions specified, and also to show ratification of its corporate rights by the recognition on the part of the legislature of its full corporate existence.

This railroad was constructed in Grand avenue upon two rows of iron columns placed upon foundations, which are eight feet and four inches apart, and eight feet and eight inches from the curb on each side, and which thus divided the avenue

into three spaces substantially equal. It is for a road thus con-
structed that the corporation in this proceeding seeks to con-
demn the real estate interests of Wing. He claims that the
road is illegally and improperly constructed, and that the cor-
poration cannot take his interests in the avenue for such a
structure.

Section 5 of the act of 1874, provides that " the said ele-
vated railroad shall be constructed as follows, namely : Iron
columns shall be placed on each side of the street, avenue or
roadway in a line with the curb-stones ; said columns to be
firmly bolted to concrete fondations of suitable size and shape
to insure perfect firmness in all cases ; said foundations and
the location of them to be subject to the approval of the chief
engineer of the Board of City Works of the city of Brooklyn.
Iron girders not more than thirty-six feet in length shall be
placed across the streets and avenues, and to be properly
attached to the tops of such columns." What kind of a struct-
ure did this authorize ? It did not require that the columns
should be placed in or on the curbs, because the girders could
not be more than thirty-six feet long, and some of the streets
were wider than that between the curbs. They were required
to be placed on the sides of the streets — not necessarily in the
curbs, but on a line with them, and thus necessarily parallel
with them, and, that they might be placed so as to do the least
injury and cause the least inconvenience and obstruction, their
location was subject to the approval of the engineer. This section
was amended by chapter 422 of the Laws of 1875, so as to read as
follows : " The said elevated railway shall be constructed as fol-
lows : Iron columns shall be placed on each side of the streets,
avenues and roadways, as near as practicable on a line parallel
with the curb-stones, said columns to be firmly bolted to concrete
foundations of suitable size and shape to secure perfect firmness
in all cases, subject to the approval of the chief-engineer * * *.
Iron girders shall be placed above the streets and avenues, and be
properly attached to the tops of such columns." This amended
section did not restrict the powers of this corporation, for
thereafter it could build precisely such a structure as it was

before authorized to build, but its powers were enlarged. Instead of using transverse girders it could, at its option, use longitudinal girders. Where were the columns to be placed? The claim of the learned counsel for Wing is that they were still required to be placed on the sides of the street, but as near as practicable on a line parallel with the curbs. We have no light for the construction of the amended section, except that furnished by the language thereof as well as by the language of the section prior to its amendment. We think the comma after the word "roadways" should be placed after the word "practicable," and thus the requirement is that the columns should be placed as near as practicable on the sides of the streets, but parallel with the curbs. If the amendment was simply for the purpose of requiring the columns to be placed as near as practicable parallel with the curbs it was unnecessary, as the unamended section required that. Before, the columns were required absolutely to be placed on the sides of the streets, and we think the plain purpose of the amendment was to alter this rigid requirement and to authorize the columns to be placed as near as practicable to the sides of the streets. The person who drafted the amended section evidently intended to provide for a case where the rows of columns might be placed near to each other and at some distance from the curbs, as the section was so amended as to allow longitudinal girders. We may suppose, in the absence of any proof on the subject, that if the columns were placed near the curbs, transverse girders spanning the streets would be needed to uphold the structure. But if the columns were placed near to each other, transverse girders would not be needed, or even as appropriate as longitudinal girders. Under the amended section as before, the location of the columns and the foundations thereof were to be subject to the approval of the engineer, and in this the public as well as the abutting owners were expected to have all reasonable and practical protection. In thus construing this section we are obliged to transpose a comma, but in so doing we violate no canon of construction as we think the legislative sense requires it, and such liberty with punctuation is frequently taken by the

courts. In *Gyger's Estate* (65 Penn. St. 311), SHORSWOOD, J., said: "there is no punctuation in a statute which ought to rule," and in *Cushing* v. *Worrick* (9 Gray, 382), the court said: "the general rule is that punctuation is no part of a statute." See also *Hamilton* v. *Steamboat Hamilton* (16 Ohio St. 428).

There was evidence tending to show that these columns were placed, as nearly as practicable, on the sides of the streets, and we see no occasion to interfere with the finding of the court below upon such evidence. The corporation, subject to the approval of the engineer, was clothed with some discretion as to the location of the columns, and with the reasonable exercise of that discretion no court should interfere. (*Railroad Co.* v. *Stoddard*, 6 Minn. 150; *Fall River Iron Works Co.* v. *Railroad Co.*, 5 Allen, 221; *Boston & Prov. R. R. Co.* v. *Midland R. R. Co.*, 1 Gray, 341; *Parke's Appeal*, 64 Penn. St. 137.)

It does not appear that the public authorities object to the location of these columns, or that Wing made any objection until after they were located and the road was in operation. The only interests he appears to have in the street which are peculiar to him and for which he can have any protection or compensation, are his easements of light, air and access; and it is very clear that these easements are less interfered with than they would be if the columns on his side of the street had been placed nearer to the curb. Under all the circumstances, therefore, we think it is but fair and just that both the law and the facts should, as to the location of the columns, be liberally construed in favor of the corporation, and we must hold that their location is not unlawful.

Other points are argued in the briefs submitted on behalf of Wing. They are of a technical nature, not relating to the merits of the controversy between these parties, and we leave them upon the findings of the court below, believing that they do not point out any error, and that they require no further notice.

The order should be affirmed, with costs

All concur.

Order affirmed.