DAVID A. LAMMING, Appellant, *v.* NORMAN H. GALUSHA and Others, Respondents.

*Directors of a railroad corporation — not chargeable as such with having negligently operated the road — corporations de facto and de jure — when the validity of their creation cannot be attacked by third persons — consent of a property owner to the construction of a railroad — chapter 606 of the Laws of 1875.*

The directors of a railroad corporation are not as such chargeable with having negligently or willfully operated the railroad so as to unnecessarily injure or prejudice the rights of a property owner along the line of the same, and if in the operation of the railroad the proprietary rights of such property owner are violated, the responsibility is that of the company, whether it be a corporation *de facto* or *de jure*, and his remedy must be sought against it.

A substantial performance of the statutory conditions precedent to the creation of a railroad corporation, sought to be organized under chapter 606 of the Laws of 1875, is essential, but although such conditions have not been fully or substantially complied with, in an attempt to create and organize a company under the act in question, and the company does not, therefore, become a corporation *de jure*, yet if there has been a colorable compliance with the requirements of the statute under which the company might have been lawfully incorporated, and the defect is in the omission to comply with the provision of the statute in respect to giving the public an opportunity to be advised what the plan of construction of the proposed corporation was, and there has been many years user by the company of the corporate rights and franchises which it claimed to have acquired, and which it assumed to exercise, such company becomes and is a corporation *de facto*.

The validity of an incorporation cannot be impeached by third parties by show-ing, *aliunde* the articles of association, that certain prerequisites of the statute have not been complied with.

There is a distinction between corporations receiving their charters directly from legislative enactment and those created pursuant to general laws, inasmuch as a failure of the former to perform certain conditions imposed, to enable them to take the benefit of the charter, will not subject their corporate character to attack by third persons, while it is otherwise in respect to corporations sought to be created under general laws when there is a failure to comply fully with the conditions precedent to their creation.

If by proceedings taken for the purpose of incorporating a company there has been an attempt to comply with the general statute under which it is sought to be created, and articles of association have been filed, from which the formation of the corporation may be presumed, the corporation, by user, as such, becomes a corporation *de facto*, with all the rights as to third persons which that imports, although its articles filed are in some particulars defective.

It then stands on the same footing as does a corporation *de facto* whose charter has come directly from legislative enactment, and by which certain conditions made requisite to its creation or organization have not been performed.

User, as well as colorable creation, is essential to a corporation *de facto*.

When a company becomes a corporation *de facto* a relation exists between it and its officers which will be recognized as effectual to enable them through such relation to justify the exercise of their functions in the control, management and operation of the business of the *de facto* corporation which they represent, and for that purpose it is as to third persons no less effectual than a corporation *de jure*.

The written consent of a property owner for the construction and operation of a railway to be incorporated under chapter 606 of the Laws of 1875, on the route determined by certain commissioners, as such construction should be author-ized by the proper authorities, if effectually given, is something more than a mere license.

APPEAL by the plaintiff, David A. Lamming, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 1st day of March, 1894, upon the decision of the court, rendered after a trial at the Monroe Special Term, dismissing the plaintiff's complaint upon the merits.

This action was brought to restrain the defendants from maintain-ing and operating a railroad known as the Rochester and Lake Ontario railway, within the limits of North avenue and the Ridge road, from the intersection of Bay street with North avenue to the intersection of the east line of plaintiff's premises with the Ridge road, and to recover damages.

*Henry W. Conklin,* for the appellant.

*Charles J. Bissell,* for the respondent.

Present — DWIGHT, P. J., LEWIS and HAIGHT, JJ.

Judgment appealed from affirmed, with costs, on the opinion of BRADLEY, J., at Special Term; BRADLEY, J., not sitting.

The opinion of the Special Term was as follows:

BRADLEY, J.:

The plaintiff alleges that the defendants have for some years wrongfully and unlawfully maintained and operated the railroad in question within and along North avenue, from Bay street in the city of Rochester to the intersection of the avenue with the Ridge road, and along that road upon and across his premises in the town of Irondequoit in the county of Monroe, to his annoyance and damage specifically mentioned. If the facts as alleged are supported by the evidence the plaintiff is entitled to relief.

It appears that on May 29, 1879, articles of association were filed in the office of the clerk of Monroe county, and in the office of the Secretary of State, on June 3, 1879, purporting to incorporate the Rochester and Lake Ontario Railway Company, pursuant to the provisions of chapter 606 of the Laws of 1875, commonly known as the "Rapid Transit Act." The railway was constructed in the summer of 1879, and ever since then it has been operated. Directors have from time to time been elected, reports have been made by the company in the manner provided by law, it has been assessed for and paid taxes upon the railroad and property, and in fact it has assumed to be and has been recognized as being a corporation having the corporate name before mentioned.

The defendants having been elected as directors of the company were acting as such at the time of the commencement of this action in February, 1891, and they assumed to have no other relation to the railroad and its operation than as such directors, nor were they as such chargeable in that capacity with negligently or willfully operating the railroad so as to unnecessarily injure the plaintiff or prejudice his rights.

The leading proposition upon which the plaintiff relies to support

the action is that the company did not become legally incorporated under the Rapid Transit Act; and that, therefore, the persons so elected as directors, and who controlled the operation of the road by reason of such relation, are chargeable as individuals for the consequences injurious to him. As represented by the articles of association, it appears that the five commissioners were duly appointed; that they duly qualified and organized themselves into a board, and did all that was essential to enable them to prepare articles of association for the company, and made and delivered to the directors the requisite certificate, duly verified, as provided by section 9 of the act, which, with the articles of association, was filed, as before mentioned. It is provided by section 7 of the Rapid Transit Act that the commissioners shall prepare appropriate articles of association for the company, in which "shall be set forth and embodied as component parts thereof the several conditions, requirements and particulars by said commissioners determined pursuant to sections 4, 5 and 6 of this act." By section 4 it is provided that they fix and determine the route and locate it; by section 5 that they, by public notice, invite the submission of plans for the construction and operation of the railway, and on the day named in the notice meet and decide upon the plans for its construction, "with the necessary supports, turn-outs, switches, sidings, connections, landing places, stations, buildings, platforms, stairways, elevators, telegraph and signal devices, or other requisite appliances upon the route or routes, and in the locations determined by them," and by section 6 that they, within the period named, shall determine the time within which such railway shall be constructed and ready for operation, together with the maximum rates to be paid for transportation and conveyance over it, and the hours during which special cars shall run at reduced fares; that they shall fix and determine the amount of the capital stock of the company, the number of shares into which it shall be divided, and the percentage of it to be paid in cash by the subscribers at the time of subscription. As before remarked, it appears by the articles of association that the commissioners had done and determined substantially all things made by the act requisite to the incorporation of the company for the construction of a surface railway. The conditions, requirements and particulars determined pursuant to the provisions of sections 4, 5

and 6 are sufficiently set forth in the articles of association. In respect to the matters mentioned in section 5, the articles represent that the commissioners, by public notice, invited the submission of plans for the construction and operation of the railway, and that at the time and place in the notice named "they determined upon the plans for the construction and operation of said railway with the necessary supports, turn-outs, switches, sidings, landing places, stations, buildings, platforms, stairways, and other requisite appliances submitted in the plans and profile of George M. Rafter." It will be observed that the commissioners set forth in the articles in the respect last mentioned what they had determined, and not the result of their determination; and that if they were required by the statute to do more they failed to comply with it, unless the reference made to the plans submitted by George M. Rafter was sufficient for the purpose. Those plans were not filed in either of the offices where the articles were filed. The evidence tends to prove that they were kept in the office where the commissioners met to transact business until their duties were performed, then were handed over to the directors. One, and the main, purpose of the plans which the commissioners had adopted by their determination was to have the railway constructed in accordance with them. This is within the requirements of the act, and to accomplish it, reference could be made to them as effectually as if a definite description of them were in the articles. There was evidently also within the contemplation of the statute the further purpose of enabling the public to have the opportunity, which would be afforded by the public records, to be advised what the plans were which the directors were required to observe and follow in the construction of the railway. The reference made to the unfiled plans was not a compliance with the legislative purpose and requirement before mentioned, and, therefore, the articles of association in that respect were defective. Complete plans were not produced at the trial, and it is contended on the part of the plaintiff that none were perfected. There was, however, evidence tending to prove that plans for the construction of the railway were submitted by George M. Rafter, that portions of them had disappeared and could not be found, and that those brought into court at the trial were a part only of the plans submitted to the commissioners and upon which their determination was made. It may,

upon the evidence, be assumed that plans were submitted to and adopted by them. Whatever effect such omission might have in an action or proceeding in behalf of the People of the State to terminate the corporate existence which the railway company has or assumes to have, it is not, in the view here taken, available to the plaintiff in support of the present action. The plaintiff, by his action, proceeds upon the theory that the Rochester and Lake Ontario Railway Company is not a corporation, and founds the charge of liability of the defendants upon their relation as directors of the company, and upon the fact that by such relation they may be supposed to have the control and direction and management of the railway. While the attack upon the corporate character of the company is collaterally made by seeking to charge the defendants, the question of its power to confer upon them the authority which they assumed to exercise as directors is directly presented for consideration. It is true that the substantial performance of the statutory condition precedent is essential to the creation of a railway corporation sought to be organized under the act before mentioned. And it may be assumed that those conditions were not fully or substantially complied with in the attempt to create and organize the company in question, and, therefore, that that company did not thereby become a corporation *de jure*. But there was a colorable compliance with the requirements of the statute under which the company might lawfully have been incorporated, and the defect was in the omission to comply in the particular before suggested. And there has been for many years user by the company of the corporate rights and franchises which it is claimed was conferred upon it, and which it assumed to exercise. By reason of such organization with color of law and such exercise of corporate franchises, the company became and was a corporation *de facto*. This proposition may not be questioned, and yet it is insisted on the part of the plaintiff that the denial of the right to successfully attack in such case the corporate existence of the company is dependent upon a relation in respect to the subject-matter of an action which is not applicable to the remedy sought by him.

It has been held in many cases that the subscribers to the stock of a corporation prior to the completion of its creation are not estopped from asserting its non-existence as such when sued to

recover the amount so subscribed. (*First Baptist Society* v. *Rapalee*, 16 Wend. 605.) The question arose in *Buffalo & A. R. R. Co.* v. *Cary* (26 N. Y. 75), where it appeared that the affidavit indorsed upon and filed with the articles of association of that company was not in compliance with the provisions of the General Railroad Act of 1850. The recovery was sustained. No opinion of the majority of the court was put in writing, but in that of the court below it was said that " if the papers filed by which the corporation is sought to be created, are colorable, but so defective that in a proceeding on the part of the State against it, it would for that reason be dissolved, yet by acts of user under such an organization it becomes a corporation *de facto*, and no advantage can be taken of such defect in its constitution, collaterally, by any person."

In *Eaton* v. *Aspinwall* (19 N. Y. 119), in referring to the Mexican Ocean Mail and Inland Company which its promoters had sought to incorporate pursuant to Laws of 1852 (Chap. 228), the court held that, by reason of non-compliance with the statute, the company was not a corporation *de jure*, but in view of its user it was one *de facto*, and added : " Thus it will be seen that this corporation, though not a valid corporation in point of law, may carry on its enterprises, have its day in court, and divide its revenue among the holders of the shares of its capital until the State shall interpose and ask that it be dissolved ; and that the only real necessity of complying with the statute in relation to the payment of the ten per cent was to prevent proceedings in behalf of the people to put an end to its corporate functions." In that case the certificate required by the statute was made and filed. The statute also provided that when that shall have been filed and ten per cent of the capital named paid in, the persons who shall have signed and acknowledged the same, etc., shall be a body politic and corporate. It may be that, in respect to the corporate existence of the company, the failure to pay in the ten per cent may not have had the same effect as the omission to make and file the requisite certificate. But no such distinction seems to have been observed by the judge who delivered the opinion. The company was treated by him as a corporation *de facto* only. The performance of a condition like that last mentioned was held essential to the incorporation in *Farnham* v. *Benedict* (107 N. Y. 159).

It was said by the court in *Snider's Sons' Company* v. *Troy* (91 Ala. 224; 24 Am. St. Rep. 887) that corporations *de facto* are under the protection of the same law and governed by the same legal principles as those *de jure* " so long as the State acquiesces in their existence and exercise of corporate functions." The same principle was declared in *Lehman* v. *Warner* (61 Ala. 455), and the case of *The People* v. *Montecito Water Company* (97 Cal. 276; 33 Am. St. Rep. 172) was a proceeding by quo warranto to dissolve the defendant or terminate its exercise of corporate franchises because of non-compliance with the statute in its attempted creation, and the complaint alleged such facts and that it was only a corporation *de facto*. Upon demurrer by the defendant, which was sustained below, it was urged that if the defendant had failed to become a corporation it could not be properly made a party, and that, by making it such, its corporate character was admitted. The court on review, in overruling this demurrer, held that the corporation being one *de facto* was a proper and necessary party, and said, in quoting from a previous case in the same court, that " a corporation *de facto* may legally do and perform every act and thing which the same entity could do or perform were it a *de jure* corporation. As to all the world except the paramount authority under which it acts, and from which it receives its charter, it occupies the same position as though in all respects valid; and even as against the State, except in direct proceedings to arrest its usurpation of power, it is submitted, its acts are to be treated as efficacious." A remark to the same effect was made by the justice delivering the opinion of the court in *Doyle* v. *Peerless P. Co.* (44 Barb. 239). And it has been held, and such, I think, is the well-established rule, that the validity of a corporation cannot be impeached by third parties by showing *aliunde* the articles of association that certain prerequisites of the statute have not been complied with. (*Laflin, etc., Co.* v. *Sinsheimer*, 46 Md. 315; 24 Am. Rep. 522; *Jones* v. *Dana*, 24 Barb. 395.) And in *People* v. *Selfridge* (52 Cal. 331) it was held that the assumed corporate character of the defendant could take no benefit for its support from the fact that a requisite condition omitted in the articles was actually performed, but that the insertion of it in the articles was as essential as its performance for the defense of an action by the State to terminate the exercise of

corporate franchises. The plaintiff's counsel has called attention to *Mokelumne Hill Canal & Mining Company* v. *Woodbury* (14 Cal. 424; 73 Am. Dec. 658), where it was said that " there is a broad and obvious distinction between such acts as are declared to be necessary steps in the process of incorporation and such as are required of the individuals seeking to become incorporated, but which are not made prerequisites to the assumption of corporate powers. In respect to the former, any material omission will be fatal to the existence of the corporation, and may be taken advantage of collaterally in any form in which the fact of incorporation can properly be called in question." The same proposition is stated in Beach on Corporations, section 16. This question did not necessarily arise in that case, as the court held that such defense was not available to defendant in that action. Nor do the views there so expressed seem supported by those of the court in the later case in the same State of *People* v. *Montecito Water Company* (*supra*).

A distinction between corporations having their charter directly from legislative enactment and those created pursuant to general laws is observed by the courts in some cases, where it is held that failure of the former to perform certain conditions imposed to enable them to take the benefit of the charter will not subject their corporate character to attack by third persons, while it is otherwise in respect to corporations sought to be created under general laws when there is a failure to comply fully with the conditions precedent to their creation. That distinction may be well founded so far as relates to the organization of them, as in the one case they are created by the statute and in the other their creation is authorized by it. But when, by proceedings taken for the purpose, there has been an attempt to comply with the statute under which it is sought to incorporate the company, and articles of association have been filed, it, by user as such, becomes a corporation *de facto*, with all the rights as to third persons which that imports, although its articles filed are in some particular defective. I see no reason why it does not then stand on the same footing as does a corporation *de facto* whose charter has come directly from legislative enactment, and by which certain conditions made requisite to its creation or organization have not been performed. The plaintiff in *Brooklyn Steam Transit Company* v. *City of Brooklyn* (78 N. Y. 524) had been

duly incorporated, but had failed to perform conditions subsequent. By the statute which granted the charter it was provided that on failure to comply with such conditions the act by which the plaintiff was incorporated and the powers, rights and franchises granted by it, should be deemed forfeited and terminated; thus providing for self-executing forfeiture, and, therefore, the plaintiff there had no existence at the time the action was commenced. As has been said later by the court, that was a border case, and such effect will not be given to default in performance of conditions subsequent unless such legislative purpose is plainly manifested. (*In re Brooklyn Elevated R. R. Co.*, 125 N. Y. 434.) The statute under which the corporation in the latter case was organized provided that for the default with which it was charged it should "forfeit the rights acquired by" it under the statute. And it was held that, although the State could take away its corporate life, until then a private individual could not effectually assert the forfeiture or in any way challenge its corporate existence.

In *Farnham* v. *Benedict* (107 N. Y. 159) the defendant was charged with fraud in procuring the issue of town bonds which he had taken and transferred to *bona fide* holders. They purported to have been issued in aid of the construction of a railroad as provided by the statute, pursuant to which it was represented to have been incorporated. It appeared that a requisite affidavit in the articles of association, and which was made by the defendant, was false; that the company was not only not a corporation *de jure*, but was a sham corporation, and that the defendant was a promoter of the scheme. Nothing was done by way of construction, although the time prescribed therefor by the statute by which the incorporation of the company was authorized had expired. That case does not seem to have any necessary application to the questions in the present case.

The attention of the court is called to *The N. Y. Cable Co.* v. *Mayor, etc.* (104 N. Y. 1), and it is forcibly urged by the plaintiff's counsel that the doctrine of that case supports his alleged cause of action against the defendants. It was the determination on review of an order of the General Term denying a motion of the cable company made to confirm the report of commissioners, etc.; and the question was whether or not the company could, in the

exercise of the right of eminent domain, take property for the purposes of its contemplated railroads in the streets of the city of New York. The court held that it could not unless it was validly organized pursuant to the Rapid Transit Act; and that as the act prescribed the proceedings by which such rights could be acquired, substantial compliance with the material requirements was a condition precedent and essential to the legal incorporation of the company, and to enable it to acquire corporate rights under the act. The articles of association filed were in some respects defective in that they failed to provide for the release and forfeiture to the supervisors of the county of all rights and franchises acquired by such corporation in case the railways should not be completed within the time therein provided, and it appeared by the articles that the commissioners failed to substantially comply with the requirements of section 5 of the act to determine the plans for the construction of the railway, etc. This non-compliance with the provisions of the act denied to the company corporate existence, and, therefore, it, as was held, had no right to take or appropriate to its use the property of others for the purpose of constructing the railway which it had in view. This was a direct proceeding by the company to acquire, by the exercise of the alleged right of eminent domain, that which was essential to its purposes, and the right or power to do that was dependent upon its creation and organization as a corporation. This it had not accomplished, and consequently had assumed no relations to the public which enabled it through the action of the court to have or exercise such attribute of political sovereignty. The principles upon which that case was determined against the company do not seem to have any controlling application to the present action against the defendants. As has already been observed, user as well as colorable creation is essential to a corporation *de facto*. (*Buffalo & A. R. R.* v. *Cary*, 26 N. Y. 75.) And when it becomes such there is a relation between it and its officers which will be recognized as effectual to enable them through such relation to justify the exercise of their functions in the control, management and operation of the business of the corporation *de facto*, which they represent. For that purpose it is as to third persons no less effectual than a corporation *de jure*. The former is the corporate character of the Roches-

ter and Lake Ontario Railway Company and such is the relation of the defendants as its directors to it.

It is claimed on the part of the plaintiff that his property is invaded by the operation of the railway, and for that reason the defendants are liable. His premises are situated on the northerly side of Ridge road, a public highway. The southerly line of his land is the center of the highway. The line of the route of the railroad as appears by the articles of association to have been fixed by the commissioners was in that highway, and the railway was constructed within and on the northerly side of it. Prior to and at the time of the construction of the railway those premises were owned by James Schooley, and he signed a written consent for the construction and operation of the railway on the route so determined by the commissioners in North avenue and Ridge road as such construction should be authorized by the local and proper authorities of the town, and including him, the owners of more than one-half in value of the property bounded upon the streets and highways of such route signed a like consent, and the local authorities having control of them also consented thereto. The plaintiff became the owner of the premises before referred to by purchase from Schooley in 1883, nearly four years after the railway was constructed and put in operation. If this consent of Schooley was effectually given, it was in view of the statute something more than a mere license. (*White* v. *Manhattan Ry. Co.*, 54 N. Y. St. Repr. 409.) But what, if any, effect the insufficiency of the articles of association may have upon the force of such consent, it is now deemed unnecessary to consider. The property of the plaintiff was not invaded by the act of construction of the railway, and since his purchase the railroad has been in the possession of the company and operated by it through its constituted officers, against whom no charge is sustained that they have done more than to exercise the functions of that relation to the company, and, therefore, the continued operation of the railroad in the place where it was located and constructed is the act of the company and it only. In the case of *Fanning* v. *Osborne* (34 Hun, 121 ; 102 N. Y. 441) the railroad there referred to was used exclusively for the private business purposes of D. M. Osborne & Co., and it was held that as the company had no right under the statute to appropriate a street for the operation of a railroad for other than the public purpose of

transportation of persons or property, or both, it was a nuisance. The railway in question here is appropriated to the public purposes contemplated by the Rapid Transit Act. And if, in its operation, the proprietary rights of the plaintiff are violated, the responsibility is that of the company, and the remedy is to be sought against it. The view taken is that although the omission before mentioned in the articles of association may have been a failure in that respect to comply with the statutory provisions for the creation of a corporation under the Rapid Transit Act of 1875, the Rochester and Lake Ontario Railway Company, by the filing of the articles in question, in connection with the user which followed, became a corporation *de facto*, and as such effectually supports the relation to it of the defendants as its directors, and that in the performance of their functions they are sheltered from personal liability by that relation to the company as such corporation.

The effect upon the *status* of the company as a corporation, whatever it may have been, of chapter 311 of Laws of 1880, which purports to ratify the location of the route upon which the railroad was constructed, etc., is not considered because the disposition of that question is deemed unnecessary for the purposes of this action.

The conclusion follows that the complaint should be dismissed.