RICHARD C. CRAWFORD et al.

v.

JOHN E. BURKE.

Opinion filed February 18, 1903—Rehearing denied April 9, 1903.

1. BANKRUPTCY—*provable debt created by fraud not discharged.* The words "while acting as an officer," etc., used in section 17 of the Bankruptcy act, providing that a discharge in bankruptcy shall release the bankrupt's provable debts, except such as "were created by his fraud, embezzlement, misappropriation, or defalcation *while acting as an officer or in any fiduciary capacity,*" refer to the word "defalcation," and not to the word "fraud," "embezzlement" or "misappropriation."

2. SAME—*fraud must be positive as distinguished from constructive.* In order that a discharge in bankruptcy shall not release a provable debt created by fraud, the fraud must be positive, involving moral turpitude, and not merely constructive.

3. JUDGMENTS AND DECREES—*effect of affirmance by Appellate Court in case of disagreement.* A judgment of affirmance by the Appellate Court entered because of the disagreement of two of the judges, the third having presided in the trial court, settles all controverted questions of fact and inferences of fact arising from facts proven, the same as other judgments of the Appellate Court in suits at law.

4. EVIDENCE—*when objection to exclusion of testimony is waived.* An objection that the court erred in refusing to allow a defendant to testify as to his good faith in the transaction involved is waived, where the plaintiff withdrew his objection after it had been sustained, and stated that the testimony might be admitted without objection, but the defendant declined to avail himself of such withdrawal and did not testify.

5. APPEALS AND ERRORS—*when question of illegality of contract is not presented.* While parties to a suit cannot, by some act or omission of their own, compel courts to enforce contracts forbidden by law, yet the question of illegality cannot be considered by a court of review if there is some evidence that the contract was a legal one, and the record does not show, either in the pleadings, evidence or propositions of law, that the question was raised in the trial court.

6. SAME—*when question of wrong theory of damages is not presented.* An objection that the court adopted a wrong theory in assessing damages is not presented as a question of law, even though it appears from remarks embodied in the bill of exceptions that the court expressed views on the subject, where no proposition of law presenting the question was asked and there is nothing to show the court carried these views into its findings or judgment.

*Crawford v. Burke,* 102 Ill. App. 566, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

MUSGRAVE, VROMAN & LEE, for appellant Edward A. Valentine:

The evidence offered and received upon the trial of this case is properly before the court for the purpose of determining the real character of appellee's claim and to enable the court to properly apply the provisions of the Bankrupt act of 1898. The court erred in rejecting the evidence offered by appellants to the same effect. 1 Chitty's Pl. 246; *Clough* v. *Shepard,* 31 N. H. 490; *Teal* v. *Fonda,* 4 Johns. 304.

Appellants' claim is provable in bankruptcy, whether it arises upon contract or upon the alleged fraudulent conduct of appellants. *In re Hirschman,* 104 Fed. Rep. 69; Bankruptcy act of 1898, secs. 17, 63; *In re Silverman,* 101 Fed. Rep. 219.

The only "fraud," etc., which excepts a claim from the operation of the bar of a discharge in bankruptcy is the "fraud," etc., which has been reduced to or merged in a judgment, (under subdivision 2,) or the "fraud," etc., of an officer or person in a fiduciary capacity, under subdivision 4 of the Bankruptcy act. The appellee's claim was not in judgment. The appellants did not occupy a fiduciary relation to the appellee, within the meaning of the Bankruptcy act of 1898. *Chapman* v. *Forsyth,* 2 How. 202; *Neal* v. *Scruggs,* 95 U. S. 704; *Hennequin* v. *Chews,* 111 id. 565; *Noble* v. *Hammond,* 129 id. 68; *Upshur* v. *Briscoe,* 138 id. 375; *In re Basche,* 97 Fed. Rep. 761; *Brackin* v. *Milner,* 104 id. 522.

If the terms "fraud," etc., used in subdivisions 2 and 4 in an apparent close relation to "judgment" in the one case and "officer" and "fiduciary capacity" in the other, are to be construed distinct from and independently of

those terms and as though standing alone, then it is insisted by the appellants that there is no such fraud here as brings the case within the meaning of that term as used in the Bankrupt act. "Fraud," as used in that act, means a positive fraud or fraud in fact, involving moral turpitude or intentional wrong, and not mere fraud in law, without the imputation of bad faith or immorality. *Hennequin* v. *Chews*, 111 U. S. 565; *Neal* v. *Scruggs*, 95 id. 704; *Brackin* v. *Milner*, 104 Fed. Rep. 522; *Noble* v. *Hammond*, 129 U. S. 68; *Upshur* v. *Briscoe*, 138 id. 375; *Burnham* v. *Pidcock*, 68 N. Y. Sup. 1009.

The transactions out of which the appellee's claim arises were of a gambling character and illegal and void at common law and under the statute. *Lyon* v. *Culbertson*, 83 Ill. 38; *Goby* v. *People*, 31 Ill. App. 242; *Cothran* v. *Ellis*, 125 Ill. 506; *Schneider* v. *Turner*, 130 id. 39; *Jamieson* v. *Wallace*, 167 id. 396.

PECKHAM, BROWN & PACKARD, for appellant Richard C. Crawford:

Even though actual, positive fraud, involving moral turpitude, should be considered as admitted on the pleadings or proven by the record in this case in contracting the indebtedness sued for, the discharge of the defendants in bankruptcy must be held to release them from such indebtedness. The debt is provable in bankruptcy. Bankruptcy act of 1898, secs. 1, 63; *In re Hirschman*, 104 Fed. Rep. 69; *Western Assurance Co.* v. *Towle*, 26 N.W. Rep. 106; *Graham* v. *Railroad Co.* 10 id. 612; *Dashaway* v. *Rogers*, 21 Pac. Rep. 742; *In re Silverman*, 101 Fed. Rep. 219; *In re Swift*, 105 id. 493.

To except indebtedness created by positive fraud from a discharge in bankruptcy it must be in judgment, or the fraud must have been committed by an officer, or by one acting in a fiduciary capacity. Bankruptcy act of 1898, sec. 17, subd. 2, 4; *In re Rhutassel*, 96 Fed. Rep. 599; *In re Hirschman*, 104 id. 69; *In re Lewinsohn*, 99 id. 74; *In re Basch*,

97 id. 761; *Dry Goods Co.* v. *Hudson*, 111 id. 361; *Gee* v. *Gee*, 87 N. W. Rep. 1116; *Morse* v. *Kaufmann*, 40 S. E. Rep. 916; *In re Bullis*, 73 N.Y. Sup. 1048.

It is admitted that indebtedness arising out of mere constructive fraud or fraud in law, not involving moral turpitude, is released by a discharge in bankruptcy. *Neal* v. *Scruggs*, 95 U. S. 704; *Straus* v. *Bradner*, 114 id. 599.

JOHN E. BURKE, (PENCE & CARPENTER, and T. A. MORAN, of counsel,) for appellee:

The qualifying phrase in subdivision 4 of section 17 of the present Bankruptcy act, viz., "while acting as an officer or in any fiduciary capacity," refers, grammatically, to its next antecedent only, which is the term "defalcation," and does not apply to or limit the term "fraud." Bankruptcy act of 1898, sec. 17; *Cushing* v. *Worrick*, 9 Gray, 382; *State* v. *Jernigan*, 3 Murphey, 12; *Dearborn* v. *Brookline*, 97 Mass. 466; *Quinn* v. *Lowell Light Corp.* 140 Mass. 106; *Cummings* v. *Akron*, 6 Blatchf. 509; *Hamilton* v. *Steamboat*, 16 Ohio St. 428; *Zimmerman* v. *Willard*, 114 Ill. 364; Central Law Journal, 229, 236; *Albright* v. *Payne*, 1 N. E. Rep. 20; *Joy* v. *St. Louis*, 138 U. S. 1.

A discharge in bankruptcy under the act of 1898 does not release a bankrupt from debts created by his fraud. Bankruptcy act of 1898, sec. 17; *In re Blumberg*, 1 Am. B. Rep. 633; *In re Thomas*, 92 Fed. Rep. 912; *In re Black*, 97 id. 493; *In re Basch*, id. 761; *In re Lewinsohn*, 99 id. 73; *In re Steed*, 107 id. 682; Loveland on Bankruptcy, secs. 293, 295; Lowell on Bankruptcy, sec. 433; Collier on Bankruptcy, (3d ed.) 200; *In re Cole*, 106 Fed. Rep. 837; *Bracken* v. *Milner*, 104 id. 522; *Frey* v. *Torry*, 73 N.Y. Supp. 201; *Frey* v. *Torry*, 75 id. 40; *Stevens* v. *Meyer*, 76 id. 332.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action on the case, brought in the Cook circuit court by John E. Burke, the appellee, against Richard C. Crawford and Edward A. Valentine, the ap-

pellants, to recover damages for the wrongful and fraudulent conversion of certain shares of stock belonging to the plaintiff, and of the proceeds of the sale thereof, or of his reversionary interest therein, to their own use, as alleged in the first five counts of the declaration, and as alleged in the last five counts, for false and fraudulent representations made by the defendants to the plaintiff, to the effect that they had and held, on purchases made by them at his request, a certain large number of shares of said stock, in order to obtain, and whereby they did obtain, from him large sums of money as margins or part payments on such stock, when in truth and in fact they did not have or hold such shares of stock, but had previously, without his knowledge or consent, sold the same on their own account, with intent, as alleged in all the counts, to cheat and defraud the plaintiff. The suit was brought in 1897, and the defendants pleaded not guilty. Afterward, in 1901, Congress having in the meantime enacted the Bankrupt law of 1898, and the defendants having, in proceedings thereunder, been duly discharged in bankruptcy, they filed their separate pleas *puis darrein continuance* setting up such discharge, and also, in the same pleas, traversing the positive fraud and fraudulent intent alleged in the declaration. Replications were filed by the plaintiff, not denying the bankruptcy proceedings and the defendants' discharge therein, but taking issue, in the language of the pleas, on the matter averred in them traversing the alleged fraud. A jury was waived, trial had by the court, and judgment was rendered for the plaintiff for $9690 and costs. The defendants appealed. One of the judges of the Appellate Court having heard the cause on a former trial took no part, and the other two judges being unable to agree, the judgment was affirmed. The defendants then took this appeal to this court.

The evidence tends to prove that the defendants were associated together as partners, doing business in Chicago as stock brokers, and that in 1894 and 1895, acting

as the brokers and agents of the plaintiff, they purchased at his request, from time to time, through other brokers in Philadelphia on the stock exchange in that city, upwards of one hundred shares of Metropolitan Traction stock, and also by agreement with the plaintiff took over a large number of other shares of the same stock from other brokers, agents of the plaintiff, who had previously purchased and were carrying the same for him, until the defendants had and held for him five hundred and fifty shares of such stock, upon which he had paid the required margins or payments on account of such stock to a large amount of money, and which said stock the defendants agreed to carry for the plaintiff, he having agreed to make such further payments on the purchase price as should be required, and which agreement he had faithfully performed on his part. At one time, about April 1, 1895, when the defendants, by the course of dealings between the parties, should have had for the plaintiff, as they then represented to him they did have and were carrying for him, five hundred and fifty shares of said stock, the defendants demanded of him, because of a falling market, $3800 as further margins or payments on that number of shares, and which amount he then paid, when the truth was that they had previously sold all but fifty of said shares without his consent or knowledge and without having rendered to him any account for the same whatever. They were then insolvent, and about May 20, following, failed in business and a receiver was appointed. Shortly before such failure plaintiff offered to pay the balance of the unpaid purchase price due on said five hundred and fifty shares and demanded delivery to him, but the defendants were wholly unable to comply with the demand.

The principal question in the court below was and in this court also is, whether or not recovery by the plaintiff was barred by the discharge in bankruptcy set up in the pleas *puis darrein continuance.* This question is pre-

sented by the holding of the court as law in the decision of the case, certain propositions asked by the plaintiff, applicable, respectively, to different ones of the several alleged tortious acts of the defendants. It will be necessary to state here only one of such propositions, viz., the second:

2. "If the evidence shows that the defendants were acting as the brokers and agents of the plaintiff, and that on or about the 10th day of January, 1895, the defendants, as such brokers and agents, were carrying for him, and had in their possession or under their control for the plaintiff and belonging to him, four hundred shares of Metropolitan Traction stock in controversy in this cause, and that on or about the said 10th day of January, 1895, the defendants, without the knowledge or consent of the plaintiff, sold or caused to be sold one hundred shares of said stock, and converted or appropriated to their own use the said one hundred shares, or the proceeds of the sale thereof, or the plaintiff's reversionary interest in said one hundred shares or his interest in said proceeds, and that such sale, conversion or appropriation was made with the intent to commit upon the plaintiff a positive fraud, involving intentional wrong, then the court holds that the defendants' conduct was such that their discharge in bankruptcy is not a legal defense to plaintiff's claim for such damages, if any, as he may have sustained by reason of such sale, conversion or appropriation."

The court refused to hold as law in the case, at the request of the defendants, that the discharge in bankruptcy was a bar to any recovery in the case by plaintiff, under his declaration.

There was sufficient evidence for the court to find the facts as they were hypothetically stated in the plaintiff's propositions and also substantially as they were alleged in the declaration, but whether such debt or liability was released by the discharge in bankruptcy depends on the proper construction to be given to the act of Congress.

Section 17 of the present Bankruptcy act is as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the State, county, district or municipality in which he resides; (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The construction contended for by the defendants is, that even if the plaintiff's demands be held to be a debt created by the fraud of the defendants, still such debt was barred by the discharge in bankruptcy because it was not created while they were acting as officers or in any fiduciary capacity. Leaving out matter not applicable to this case, the section reads: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." The defendants were not acting as officers, and it is conceded that they were not acting in any fiduciary capacity within the meaning of the statute, but appellants insist that the phrase "while acting," etc., qualifies and limits all that precedes it in this the fourth exception, so that the act of fraud, embezzlement or misappropriation must have been committed while the defendants were acting as officers or in some trust capacity. While the meaning of the statute is not as clear as it might have been made, we are of the opinion the true construction is this: that the discharge will not release a bankrupt from his debt

created (1) by his fraud; (2) by his embezzlement; (3) by his misappropriation; (4) by his defalcation while acting as a public officer or in any fiduciary capacity. Such is the grammatical construction of the sentences as punctuated, and while punctuation is not necessarily a part of the statute and is not controlling, and may even be wholly disregarded when necessary to give effect to the intention of the legislature otherwise appearing, still it is proper for consideration in determining the grammatical construction of written language, and may shed some light on the meaning of a statute when otherwise doubtful. *Osborn* v. *Farrell*, 87 Ill. 89; 23 Am. & Eng. Ency. of Law, 334; 11 id. 521, and cases there cited; *Hamilton* v. *Steamboat, etc. Co.* 16 Ohio St. 428; *Joy* v. *St. Louis*, 138 U. S. 32; *Cushing* v. *Warwick*, 9 Gray, 385; *State* v. *Jernigan*, 3 Murphy, 18.

But other reasons of a more potent character may be given for the construction we adopt. In the first place, the former Bankruptcy act of 1867 excepted from the operation of the discharge, debts created by the fraud or embezzlement of the bankrupt acting as an individual, and the word "defalcation" in that act was confined to public officers and those acting in a fiduciary capacity. Section 33 of the act provided "that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer or while acting in any fiduciary character, shall be discharged under this act, but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." (U. S. Rev. Stat. 5117.) In *Strong* v. *Bradner*, 114 U. S. 555, it was held that a debt fraudulently contracted by commission merchants was not released by their discharge in bankruptcy under the act of 1867, and that the term "fraud" in that act meant positive fraud, involving moral turpitude or intentional wrong, and not mere constructive fraud. (See, also, *Forsyth* v. *Vehmeyer*, 117 U. S. 117; 176 Ill. 359.) Such having been the construction placed on the former act,

the present one, though not equally clear, being substantially the same, should receive the same construction. (Lowell on Bankruptcy, p. 395; Black on Interpretation of Laws, 161; *In re Basch,* 97 Fed. Rep. 761.) Had Congress intended to make so important a change in the law in the respect mentioned as appellants contend was made by the act of 1898, we would expect to find in the statute language clearly evincing such intention. A mere change in phraseology, apparently for the sake of brevity, rendering the meaning somewhat obscure, cannot be regarded as showing a legislative intent to depart so radically from precedents established by previous bankruptcy legislation and judicial decisions as to provide that debts created by the fraud or embezzlement of the bankrupt should be released by his discharge in bankruptcy, unless such fraud or embezzlement should be committed while the bankrupt was acting as a public officer or in a fiduciary capacity. (See *Willis* v. *Eastern, etc. Co.* 169 U. S. 295; Potter's Dwarris, 181, note.) In the second place, the second exception to the operation of the discharge is, "judgments in actions for frauds," etc. Such judgments were doubtless excepted to avoid the otherwise reasonable construction that as judgments, like other judgments merging the cause of action, they would come within the operation of the discharge in bankruptcy. (*Frey* v. *Torrey,* 73 N. Y. Supp. 201.) But it was still necessary to make provision for debts fraudulently created,—that is, those created by fraud in fact,—where no judgment had been obtained, and this was done in the fourth exception. No good reason can be perceived why a judgment for fraud should be excepted from the operation of the discharge and not a debt or an obligation created by fraud or crime. In the next place, while our attention has not been called to any decision of the Supreme Court of the United States construing this part of the statute of 1898, we are of the opinion that the weight of authority supports the construction we have

given. (See authorities already cited, and *Bracken* v. *Milner*, 104 Fed. Rep. 522; *In re Cole*, 106 id. 106; *Frey* v. *Torrey*, 75 N. Y. Supp. 40; *Stevens* v. *Meyer*, 76 id. 332.) Cases holding a contrary view are cited by appellants, but we cannot regard them as controlling or as supported by correct judicial reasoning.

Counsel for appellants contend, however, that their alleged fraud was only implied or constructive fraud, and not fraud in fact, involving intentional wrongdoing or moral turpitude, and that even if opposing counsel be correct in their interpretation of the statute, still the discharge of appellants would release their said debt so created by their constructive fraud. The law undoubtedly is, and all the authorities so hold, that the fraud must be fraud in fact and not merely fraud implied by law. It must be positive fraud, involving moral turpitude. It seems clear, however, that the declaration in this case sufficiently charges the *mala fides* of the defendants in the transaction, setting forth their wrongful and fraudulents acts, and that such acts were done with intent to cheat and defraud the plaintiff, and there can be no doubt that the evidence is legally sufficient to support the declaration.

But we cannot agree with appellants that this case comes to this court precisely as it went to the Appellate Court. The judgment of the Appellate Court is as conclusive upon all controverted questions of fact in this case as in any other, notwithstanding the recitals in the judgment of affirmance showing the disagreement between the two judges who considered the case in that court. The statute makes no exception of such a case. We must regard all questions of fact as settled against appellants, and this includes all inferences of fact arising from facts actually proved. There is no evidence in the record except that produced on behalf of the plaintiff. On behalf the defendants, one of them offered himself as a witness to disprove the alleged fraud in the

transactions complained of. On objection of the plaintiff the testimony was not admitted, and the ruling was excepted to. This ruling of the court was based on the view that the pleas *puis darrein continuance* waived all prior pleas and admitted the cause of action as alleged in the declaration, and constituted the discharge in bankruptcy the sole defense. We have held that such a plea waives all prior pleas, and that no defense can be urged except that set up in the plea *puis*. (*Mount* v. *Scholes*, 120 Ill. 394; *City of East St. Louis* v. *Renshaw*, 153 id. 491; *Angus* v. *Chicago Trust and Savings Bank*, 170 id. 298.) Upon this view of the law the court also held certain propositions, asked by the plaintiff, as law in the decision of the case, to the effect that all the material matters of fact alleged in the declaration stood admitted by the pleadings. Whether this well settled rule of pleading was strictly applicable in this case in view of the character of the plea and the issue taken on it by the plaintiff we consider it unnecessary to decide, inasmuch as the judgment of the court was correct, independently of the rulings complained of. In the first place, after the court had sustained plaintiff's objection to the testimony of the defendants as to their good or bad faith in the transactions complained of, the plaintiff withdrew, in open court, his objections to such testimony, and stated that the same might be admitted without objection, but the defendants declined to avail themselves of such withdrawal and refused to call any witness, and it is evident from the record that they preferred to save their exception for appeal, rather than to have the defendants heard as witnesses in the case. We must hold that appellants waived the alleged error of which they are now complaining.

In the next place, it was not necessary to the judgment which was rendered, as the record stood, to decide whether the allegations of the declaration were admitted by the pleadings or not. They were established by the proof which had been adduced by the plaintiff, and the

propositions held as law on that branch of the case be-
ing correct, judgment for plaintiff necessarily followed,
unless, indeed, the contracts and dealings between the
parties involved in the suit were, under the laws of this
State, illegal and void, as now contended by appellants.
And this brings us to that feature of the case,—that is
to say, the appellants contend in this court, that by the
contracts and dealings between the parties it was not
contemplated that the shares of stock purchased by the
defendants for the plaintiff were to be delivered to him,
but only that settlements should be made upon the basis
of differences between the contract and the market prices;
or, that the parties were dealing in options and their con-
tracts were gambling contracts, in violation of the law
and public policy of this State, and that no recovery can
be had on any matter arising out of them. The record
gives no hint, by pleading, evidence or propositions of
law, that this question was raised or sought to be raised
in the trial court, and it is approached in this court by
both parties with great caution and evident reluctance.
While it is doubtless true that the parties to a cause
cannot, by act or omission of their own, compel courts of
justice to enforce contracts, or supposed rights growing
out of contracts, which are forbidden by law, and while
courts may, for the preservation of their own dignity
and for the public welfare, compel investigation in that
regard before deciding the cause, (*Oscanyan* v. *Arms Co.*
103 U. S. 261; *Wright* v. *Cudahy*, 168 id. 86;) still, we are
unable to see how we `can on this record pass on the
question here as one of law. If the question, though
not mentioned in the record, might be considered as em-
braced in some of the general propositions of law asked
by the defendants but refused by the court, it is sufficient
to say that there was some evidence on the part of the
plaintiff tending to prove that he purchased the stock
for delivery to him, and not the mere option to buy or
sell it. But what the status of the case would have been

201—38

had a full defense been made or had this question been fully investigated, cannot, of course, now be known.

Appellee, by cross-errors.assigned, attempts to question the amount of damages allowed him by the trial court. He insists that the court adopted a wrong theory in the assessment of damages,—that is, allowed him the value of the stock at the time he demanded it, instead of its higher value when it was fraudulently sold and converted. Counsel have not pointed out, and we have been unable to find from the record, how this question, as one of law, is presented to this court. The trial court was not asked to hold any proposition as law in the case respecting it. It does appear from remarks of the court embodied in the bill of exceptions that the court expressed his views on the proper measure of damages, but nothing appears to show that he carried these views into his findings or judgment.

Finding no material error, the judgment must be affirmed.

*Judgment affirmed.*