WILLIAM FLEMING *et al.* Appellees, *vs.* THE ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Appellant.

*Opinion filed October 24, 1916—Rehearing denied Dec. 8, 1916.*

1. EASEMENTS—*what rights are acquired by a railroad in purchasing fee simple title to right of way.* Under a grant giving the railroad a fee simple title it has the right to use its right of way for all purposes connected with the construction, maintenance, repair and complete operation of its railroad, to change its road-bed and increase the number of its trains or tracks or change its motive power from steam to electricity; and these are continuing rights, enabling it to change its plan of construction and operation to meet the demands of a growing business.

2. SAME—*when damages cannot be recovered because of elevation of a railroad owning fee simple in right of way.* Damage that neighboring property sustains because of the elevation of the tracks of a railroad company which owns the fee simple title to the right of way cannot be recovered unless the work of elevation is done carelessly and negligently.

3. SAME—*when counsel cannot raise the question that railroad made no elevations outside right of way.* Counsel for a railroad company cannot insist in the Supreme Court that there is no evidence in the record that the railroad constructed an approach on a roadway outside its right of way when the question was not raised in the trial court and the issues were submitted to the jury, under instructions from both sides, on the basis that the railroad company constructed such approach or caused it to be constructed to make the roadway correspond with the new level of the tracks.

4. SAME—*rights of owners of property abutting street or highway.* Owners of property bordering upon a street or highway, in addition to the public right of travel which they enjoy in common with all citizens, have a right of access to and egress from the

property by way of the street and to have light and air from the public highway unobstructed by any encroachment thereon, and these rights cannot be taken away or materially impaired without compensation to the extent of the damages suffered.

5. SAME—*when a railroad company is liable for damage from raising grade of a highway.* A railroad company which raises or causes to be raised the grade of a highway as an approach to its elevated tracks is liable for damage to abutting private property caused by turning surface or other water upon it which would not have flowed upon it but for such change.

6. APPEALS AND ERRORS—*the judgment of the Appellate Court is conclusive as to questions of fact.* The judgment of the Appellate Court affirming that of the trial court is conclusive as to questions of fact, the credibility of witnesses, whether the evidence is sufficient to support the verdict or whether the preponderance of evidence is for or against the verdict, even though the judgment of the trial court is affirmed by operation of law because one of the judges of the Appellate Court took no part in the decision and the other two disagreed.

7. INSTRUCTIONS—*when a party cannot complain of error in an instruction.* A party has no right to complain of error in an instruction when like error appears in an instruction given at his own request.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

O'DONNELL, DONOVAN & BRAY, and KNAPP & CAMPBELL, (JOHN R. COCHRAN, of counsel,) for appellant.

S. J. DREW, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought against appellant in the circuit court of Will county by appellee for alleged damages to their property by reason of said company elevating its right of way and also necessarily raising a public highway

adjoining said property. The first trial resulted in a disagreement of the jury. On the second trial a verdict was returned against the appellant for $600. In the Appellate Court, to which this case was appealed, one of the judges was the trial judge in the case and therefore took no part in its consideration on the appeal. The other two appellate judges being unable to agree, the judgment of the lower court was affirmed by operation of law. A certificate of importance was granted by that court, and this appeal followed.

Appellees were the owners in fee simple of two lots, numbered 2 and 3, in block 3, of Hacker's addition to Joliet, just east and outside of the limits of the city of Joliet. On lot 2 of said property there stood a brick dwelling house, called by appellees a two-story and by appellant a one-story and basement building. Appellant's railroad runs in a northwesterly and southeasterly direction diagonally past the rear of appellees' property, there being three tracks on the main right of way. A switch track runs off from the main tracks at the rear of the Fleming property and curves around so as to run northerly of appellees' land to the Illinois State penitentiary. A public highway, called Woodruff road, runs east and west immediately adjoining this property, on the north side of lot 2. Lot 3 is situated immediately south of lot 2 and both lots are bounded on the west by the east side of Hacker avenue. A 16-foot alley runs north and south at the rear (or east) end of lot 3, its east line striking said railroad just north of the north line of lot 3, and thence the alley bends and runs northwesterly into Woodruff road. The part of the alley that runs diagonally in the rear of said lot 2, according to the plat, is 22.7 feet in width. The general character of the land in this locality is flat, there being rising ground or low hills, however, further to the east. The natural drainage of the surface water over this land was to the south and west. The surface water from the hills east and north of Flem-

ings' property would naturally flow toward that property. In August, 1887, appellant acquired title, by statutory warranty deed, to a 100-foot strip of land across a forty-acre tract owned by H. L. Thayer and of which appellees' property is a part. Subsequent to the conveyance of this right of way Thayer conveyed the remainder of said forty acres, and it was subdivided into lots and blocks as Hacker's addition. Appellees acquired their title to this property in May, 1908. At that time there was a frame house upon these lots, into which they moved and where they resided until the house was burned, in 1911. Thereafter they erected the brick residence in which they now reside. The basement or first floor of this brick house was about twenty inches below the natural surface of the road on the north and not quite that much on the south. Previous to 1911, according to the testimony on behalf of appellees, appellant's tracks and right of way at the rear of the premises in question were some eighteen inches or more higher than appellees' land, and the roadway in Woodruff road was practically, at this point, of the same height above appellees' property. The testimony on behalf of appellant was that the tracks and right of way, as well as the public highway, previous to 1911 were some four feet above the level of the surface of the ground of appellees' property. In 1911 appellant elevated its right of way at this point, according to the testimony of its witnesses, between four and five feet, thus necessitating the elevation of the approach in the highway of Woodruff road where it crossed appellant's right of way practically the same number of feet immediately adjoining the railroad and gradually sloping to the west to the center of Hacker avenue. The testimony on behalf of appellees tends to show that the right of way of the railway was raised at least six feet in 1911, and that the approach of Woodruff road on the west, immediately adjoining that property, was raised considerably more than six feet.

The declaration in the case alleged that appellant has changed the grade of its road, and that in filling in with cinders and other material it has permitted the debris to accumulate on appellees' property, interfering with ingress and egress, and that by reason of the embankment and of the approach in Woodruff road water was precipitated upon the property and ran into the living rooms, damaging furniture, rugs and carpets and rendering the house unsanitary, and that the raising of the roadway of Woodruff road has practically destroyed ingress to and egress from the alley in the rear of appellees' property. There were also allegations in the declaration with reference to injury to appellees' property by dust, dirt, cinders and sparks being deposited thereon by the operation of the engines and trains on appellant's right of way.

The railroad company, in originally purchasing its right of way across the forty-acre tract in which appellees' property is now situated, obtained a fee simple title. Under said grant, in order to meet the demands of trade and commerce, it could elevate its road-bed and increase the number of its trains or tracks or change its motive power from steam to electricity. It has the right to use its right of way for all uses and purposes connected with the construction, maintenance, repair and complete operation of its railroad; and this is a continuing right, enabling it to change its plan of construction and operation to meet the demands of a growing business. (*Kotz* v. *Illinois Central Railroad Co.* 188 Ill. 578; *Otis Elevator Co.* v. *City of Chicago,* 263 id. 419.) Any damage that the property sustained by reason of said elevation of the railroad embankment upon the right of way of appellant cannot be recovered for in this proceeding unless such work and elevation were done carelessly and negligently, and there is no proof in the record indicating that the work was not done skillfully and in a workmanlike manner. The trial in the court below was conducted on this theory of the law, and the instructions

given to the jury were in accordance with the rules laid down in the decisions last cited.

Counsel for appellant, however, insist that the same rule applies to the elevation of the approach of the roadway in Woodruff road on the west of the right of way. In this connection they also insist that there is no evidence in the record that appellant constructed said approach outside of the lines of its own right of way. It was assumed in the trial below, and the evidence tends to support this assumption, that the entire approach from the middle of Hacker avenue to the middle of appellant's right of way was raised or caused to be raised by the railway authorities. So far as we can find in this record, no point was made on this question in the trial court, and the issues were clearly, under the instructions, presented on behalf of appellant to the jury on the basis that the work of constructing the approach on Woodruff road to the west of appellant's right of way had been performed by appellant, or caused by it to be done, to make the roadway correspond with the new level of the tracks. We do not think appellant is in any position to raise this question at the present time.

Counsel insist that the same rule of law as to the damages from the elevation of the roadway in Woodruff road should apply in this case as applies to the elevation of appellant's right of way. In this we think counsel are in error. Owners of property bordering upon a street or highway, in addition to the public right of travel which they enjoy in common with all citizens, have certain private rights incidental to their ownership of abutting property. Among these is the right of access to and egress from the property by way of the street, and the right of having light and air from the public highway unobstructed by any encroachment thereon, and these rights cannot be taken away or materially impaired without compensation to the extent of the damages suffered. (*Barnard* v. *City of Chicago*, 270 Ill. 27, and cases cited.) There is evidence tending to show that

the fair cash market value of appellees' property was re-
duced by the elevation of the roadway in Woodruff road.
While the testimony on the part of appellant was to the ef-
fect that the property was in no way injured, this was a
controverted question of fact, as to which the judgment of
the Appellate Court affirming that of the lower court is
binding on us; and this rule applies in this case even though
one of the judges of the Appellate Court took no part in
the decision and the other two disagreed in their judgment,
thus affirming the judgment of the trial court by operation
of law. *Crawford* v. *Burke,* 201 Ill. 581; *Chicago and
Eastern Illinois Railroad Co.* v. *Schmitz,* 211 id. 446.

Counsel for appellant further insist that the court erred
in giving instruction 3 for appellees, which stated that if
the jury believed, from a preponderance of the evidence,
"that the defendant, in the year 1911, raised the level of
the said Woodruff road, or caused it to be raised, for the
purpose of operating its railroad, and in such case, if you
further believe, from the preponderance of the evidence,
that by reason of the said defendant's raising or causing to
be raised the level of the said Woodruff road in the year
1911 water has been caused to flow upon the premises of
the plaintiffs, and that the said water would not have flowed
on the said premises if the said level of the said road had
not been raised in the year 1911, as aforesaid," etc., then,
if the jury further believe, from the evidence, that the fair
cash market value of said premises had been thereby re-
duced they should find for appellees. Counsel object to this
instruction because it assumes there was evidence that ap-
pellant raised the level of Woodruff road, and they con-
tend that there is no such evidence. We have already com-
mented on this question of fact. They also object because
it does not distinctly set out whether the flow thus claimed
to have been increased was surface water or other water.
They argue that if it was only surface water, under the
authorities it was rightly cast upon appellees' property, and

that there is no evidence that there was any other water than surface water cast upon the property. If it be assumed that the instruction is incorrect in any of the particulars pointed out, still appellant could not take advantage of any such error. It is a familiar rule that a party has no right to complain of error in an instruction when like error appears in an instruction given at his own request. (*Brennen* v. *Chicago and Carterville Coal Co.* 241 Ill. 610; *Harding* v. *St. Louis Nat. Stock Yards,* 242 id. 444.) Instruction 15 asked for by appellant, and given without modification by the court, is worded substantially like the instruction in question on all the points complained of. The case below, in view of the evidence and the instructions of the court, was tried on the theory presented by these two instructions with reference to any damage done to appellees' property by reason of the increase in the flow thereon, caused by raising the level of the roadway in Woodruff road. The question of the right of the public authorities, in elevating the grades of streets or highways, to cause water to flow upon abutting property is, however, urged at such length and with such earnestness that we will briefly consider the same in the light of the evidence in this case.

Appellee William Fleming testified positively that before the elevation of Woodruff road in 1911, from the time he moved into the frame house, in 1908, he had no difficulty with water in the basement or as to water from the roadway in any way injuring or interfering with living in the residence in question; that after and because of the elevation of said roadway in 1911 the basement of the brick residence now there had been frequently flooded by water running in; that the residence had been injured greatly by such flooding. There is other evidence on the part of appellees that tended to support this same conclusion. While it is true the testimony on behalf of appellant was to the effect that the elevation of the roadway of Woodruff road or the railroad could not have caused more water to fall

upon appellees' premises than fell there previous to the elevation of such roadway and tracks in 1911, this court, on this as on other controverted questions of fact, is bound by the judgments of the Appellate and trial courts. The weight of authority is to the effect that neither a railroad company nor the public authorities, in managing and improving the streets or highways or in the elevation of railroad tracks, are authorized to turn surface or other water onto abutting property that would not by the course of nature flow onto such abutting property, (2 and 3 Farnham on Waters and Water Rights, secs. 171*a*, 906; 10 R. C. L. 122;) and the rule in this jurisdiction is the same,—that is, the public authorities, in the management of corporate property, must be held to the same responsibilities that attach to individuals for injury to the property of others. (*Nevins* v. *City of Peoria,* 41 Ill. 502; *Toledo, Wabash and Western Railway Co.* v. *Morrison,* 71 id. 616; *Jacksonville, Northwestern and Southeastern Railroad Co.* v. *Cox,* 91 id. 500; *Chicago, Peoria and St. Louis Railway Co.* v. *Reuter,* 223 id. 387.) This court in *City of Aurora* v. *Reed,* 57 Ill. 29, said (p. 33) : "The city had no right to turn this surface water upon this or any other lot. In a state of nature it was not, so far as we can see, accustomed to convey all the water which accumulated in the street to its outlet into the river. The city had no right to render this lot worthless, and thus deprive the owner of its use, without making full compensation for the injury done." In *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps,* 72 Ill. 188, this court said : "Objection is taken to the giving of an instruction for the plaintiff to the effect that defendant was liable for the damage done to plaintiff's premises by turning waste and surface water and mud upon them, the ground of objection being that there is no liability on the part of the defendant for damages of that character. But this court has repeatedly held that municipal corporations in the improvement of public streets, and rail-

way corporations in the construction of their railroads, are responsible for damages caused to adjacent land owners by turning surface water upon their premises,"—citing authorities. In *City of Bloomington* v. *Brokaw & Gregory,* 77 Ill. 194, the court said (p. 195): "If the city in fixing the grade of the street, or in afterwards changing it, flows water on a lot that did not naturally carry off, the city must be held liable therefor." This court has also held that highway commissioners have the right to have surface waters falling or coming naturally upon the highway, pass off through the natural and usual channel or outlet over the lower lands. *Graham* v. *Keene,* 143 Ill. 425; *Baughman* v. *Heinselman,* 180 id. 251.

It is clear from the evidence in this record that if there is any increase in the flow of water upon appellees' premises because of the elevation of Woodruff road in 1911, that increase was not caused from the surface water that would naturally flow over and across appellees' property from the surface of the roadway immediately adjoining their property, and it is clear, also, that no other surface water on adjoining property would naturally flow over the premises of appellees. Even if appellant had not waived the objection to the correctness of the instruction by requesting an instruction containing the same elements here urged as error, we do not see how, under correct rules of law, the jury, on the facts before them, could have been misled by the giving of the instruction complained of.

Counsel for appellant further complain that instructions 2 and 3 given on behalf of appellees were misleading because they both contained the condition that if the jury believed, from the evidence, that the fair cash market value of the premises in question had been reduced, without stating in these or other instructions how the jury were to arrive at the reduction in the market value of the property; that these instructions should have stated that the measure of damages in such cases was the pecuniary difference in

market value of the property before and after the improvement. We do not think the jury were misled on this point. Taking these instructions in connection with the other instructions given by the court, in the light of the evidence in the record, we think, without question, the jury must have understood that the measure of damages was the difference in the fair cash market value before and after said change in the grade of Woodruff road.

Counsel have argued at length that the evidence does not support the verdict. Much of this argument seems to have as its basis counsel's claim that a preponderance of the evidence in the record was in favor of appellant. What we have already said as to controverted questions of fact substantially covers this ground. The judgment of the Appellate Court on such controverted questions, approving that of the trial court, precludes us from inquiring into such questions as whether one witness' story is more reasonable or more credible than that of another, whether the evidence is sufficient to support the verdict, or whether the preponderance of the evidence is for or against the verdict of the jury. *Reiter* v. *Standard Scale Co.* 237 Ill. 374.

Counsel argue that there is no evidence in the record that the work in elevating Woodruff road was not done in a skillful and prudent manner. This, however, would not relieve appellant from the liability for an injury to appellees' property if the elevation of Woodruff road was the cause of such injury.

We find no error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*