## The Illinois Central Railroad Company

### *v.*

### The Trustees of Schools.

*Opinion filed October 24, 1904—Rehearing denied December 7, 1904.*

1. Railroads—*wrong and damage must concur to justify verdict for vibration.* To justify a verdict against a railroad company for an injury to abutting property from vibration occasioned by passing trains there must be proof of some resulting physical injury to the property.

2. Same—*when testimony as to depreciation must be excluded.* Opinions of witnesses as to the depreciation in value of plaintiff's property from the construction and operation of defendant's railroad must be excluded in an action for damages where the witnesses are unable to state any grounds for their opinions other than those for which no damages are recoverable.

3. Same—*the constitutional provision against damaging private property.* The constitutional prohibition against damaging private property for public use means a special damage to the property itself which is actual, susceptible of proof and capable of approximate measurement, and not a personal inconvenience or discomfort.

4. Same—*damage must differ in kind, not merely in degree.* Damages to private property which differ only in degree from those suffered by other property in the neighborhood are not within the provision of the constitution allowing compensation for damage to private property for a public use.

5. Same—*when verdict for damages cannot be sustained.* A verdict for damages to property from the construction and opera-

tion of a railroad cannot be sustained if it is apparent it could not have been returned unless the jury considered improper elements of damage testified to by witnesses.

6. Costs—*when trustees of schools are liable for costs.* Section 1 of article 16 of the School law, (Laws of 1889, p. 341,) providing that costs shall not be charged against school officers, school corporations or any agent of the school fund in an unsuccessful suit to recover the school fund or interest due thereon, does not exempt trustees of schools from liability for costs in an unsuccessful suit by them to recover damages for injuries to school property.

*I. C. R. R. Co.* v. *Trustees of Schools,* 112 Ill. App. 488, reversed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. O. A. Harker, Judge, presiding.

Sidney F. Andrews, and W. W. Barr, (J. M. Dickinson, of counsel,) for appellant.

James H. Martin, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

This action on the case was brought by the appellees, the trustees of schools, for the use of school district No. 2 in the city of Murphysboro, against appellant, in the circuit court of Jackson county, for damages to a tract of land containing two acres, in said city, on which there is a two-story brick school house occupied for a graded school, alleged to have been damaged by the operation of appellant's railroad adjoining said tract. The declaration averred that defendant constructed its railroad track south of said premises and was maintaining and operating a railroad thereon, and charged that in passing, the locomotive engines emitted, discharged and threw out and stirred up great volumes of smoke, cinders, ashes and dust, and cast the same over, upon and into said premises, and that the trains caused loud and ominous noises and made the ground tremble, vibrate and shake, caus-

ing the school in said premises to be disturbed and frequently to suspend. The plea was the general issue, and upon a trial there was a verdict for the plaintiffs for $2500. Defendant moved for a new trial, whereupon plaintiffs remitted $700 from the verdict, and the court overruled the motion and entered judgment for $1800. The Appellate Court for the Fourth District affirmed the judgment.

The railroad was constructed and operated on defendant's own premises adjoining the school house grounds, no part of which was taken for the use of the railroad, and there was no interference with any right of access or easement appurtenant to the land or constituting a part or parcel of it. The railroad was built in a natural depression, upon an embankment about twenty-five feet high, bringing the track about on a level with the first floor of the school house. There was some difference in the hours of the different grades, but the school hours, including all of them, were from about nine o'clock to twelve and from about one o'clock to four. During that time six or eight trains passed the premises. There was a single track with no switches, and the grade was forty-six feet to the mile. The trains going down-grade caused little or no inconvenience to the school or premises, but it was claimed that damages were caused by trains going up-grade, and especially the freight trains. The railroad track was variously stated to be from one hundred and eighty-eight to two hundred and twenty-one feet from the school house. There was no substantial or direct evidence that cinders, ashes or dust were ever thrown on the premises from engines of the defendant. The school teachers were examined as witnesses by the plaintiffs, and one of them being asked whether cinders were cast upon the school house, replied that she did not know; that they had considerable cinders anyhow from the stoves in the school house. Another teacher, when asked if the trains emitted smoke or cinders, answered, "Oh, the trouble is not that so much," but she said there was some smoke. There were other wit-

nesses who were residents of Murphysboro, and one of them thought there would be some dust, and another that there would be smoke and cinders, but he said that he never saw any cinders or knew that any were ever dropped on the property. Another said that he thought there would be a certain amount of soot in the air that would fall on the school house, but no witness testified that any dust or cinder or soot was ever cast upon the premises. There was some testimony that a jarring or vibration could be felt at the school house when heavy freight trains went up the grade, but whether it was atmospheric, or whatever its nature, there was no evidence whatever of any damage from that source. There was no evidence that the building or the walls were affected in any manner whatever, or that the building, which was about twelve rods from the railroad, was not as secure, safe and sound as it ever was. Wrong and damage must concur, and there must be injury or damage to justify a verdict on account of vibration. There was no evidence tending to prove any damage from that source, and in that respect the case is different from *Chicago North Shore Street Railway Co.* v. *Payne,* 192 Ill. 239, where the ceilings and walls of the dwelling house were cracked and pieces of the plastering fell off. With reference to smoke, the evidence was that occasionally, when the wind came from the direction of the railroad, the smoke would enter the rooms on the south side, facing the track, if the windows were open. Two of the teachers testified that they were not disturbed much by the smoke. The school year commenced in September and ended the latter part of April. During most of that time the windows were closed, and there was no annoyance from smoke when they were closed. The evidence was that there was some slight annoyance from the smoke, but the principal damage, in the opinion of all the witnesses, was the noise made by the trains, which interfered with recitations in the school. The railroad consisted of a single track, and there was no switching or making up of trains opposite the premises. The evidence of

the teachers was, that when a train passed the children would turn to look at it or rise out of their seats, and in the case of heavy trains the noise would sometimes be so great as to compel a stoppage of recitations for a minute or two at a time. There were four passenger trains and two freight trains, together with an occasional extra freight and two trips of the yard engine, daily, during the school hours.

After examining the witnesses as to the effect on the premises of the operation of trains, none of whom testified as to value or damages, plaintiffs produced a number of witnesses, and asked them, on direct examination, to what extent the value of the school house premises was depreciated by the building and operation of defendant's railroad. These witnesses gave no specific reasons for fixing the damages, but testified that the school property before the railroad was built was worth $7000 or $8000, and some of them estimated the damages from $2000 to $5000, while others said they were damaged from one-third to fifty per cent of the value. On cross-examination these witnesses were inquired of as to the injuries which formed the basis of their testimony as to damages. One estimate common to all of them was the noise made by the trains, which interfered with the school, and one said that the people were not getting the value of what they paid to the school teachers because the work was interfered with. One estimate of damage included was attracting the attention of the school children during school hours and looking at the trains go by. Other witnesses had made the damage from the embankment obstructing the view a part of their estimate, and others the possibility of children getting on the track and being run over. They had all included in their estimates damages for which it is conceded there could be no recovery, and each of them testified that he was unable to state the amount of damages excluding those things for which there could be no recovery, such as attracting the attention of the school children, obstruction of the view or the possibility of children being injured. It was

made clear on the cross-examination that there was no testimony of those witnesses as to the amount of damages occasioned by smoke, cinders, dust or other things for which damages could be recovered.

The court denied the motion and allowed the testimony as to the amount of damages, ranging from $2000 to $5000, or from one-third to one-half the value of the property, to remain before the jury. In this the court erred. *City of Chicago* v. *Spoor,* 190 Ill. 340.

There are certain injuries to property for which the owner may recover damages although no part of the property itself is actually taken for the public use. While there is but little difficulty in laying down general rules concerning the nature of such injuries, there is sometimes much difficulty in applying them to particular cases and drawing a definite line between injuries for which the law allows a recovery and those for which it affords no remedy. The provision of the constitution that private property shall not be damaged for public use was not intended to reach every possible injury that may be occasioned by a public improvement. There are certain injuries incident to ownership of property in towns or cities which directly impair its value, for which the law does not afford, and never has afforded, any relief. (*Rigney* v. *City of Chicago,* 102 Ill. 64.) Those injuries are compensated for by the conveniences and advantages of civilization, and both injuries and benefits are common and public. Under the constitution of 1848, which only allowed compensation for property taken for the public use, there were certain direct physical injuries to property, none of which was actually taken, which were held to be within the constitution. Obstructing the natural flow of water and turning it in increased quantity upon the lands of an individual is an example; (*Nevins* v. *City of Peoria,* 41 Ill. 502; *City of Aurora* v. *Gillett,* 56 id. 132; *City of Aurora* v. *Reed,* 57 id. 29; *Toledo, Wabash and Western Railway Co.* v. *Morrison,* 71 id. 616;) also discharging dirty water, offal and

filth upon premises; (*City of Jacksonville* v. *Lambert,* 62 Ill. 519;) also casting smoke and cinders or dirt and dust upon premises. (*Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 68 Ill. 394; *Stack* v. *City of East St. Louis,* 85 id. 377.) The same rule has, of course, been applied under the present constitution, and a direct physical disturbance of property by casting cinders, smoke and dust upon it has been considered a taking. *Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 Ill. 226; *Chicago North Shore Street Railway Co.* v. *Payne, supra.*

The present constitution requires compensation for property taken or damaged for public use, and the question what additional class of injuries it was intended to provide for was first fully considered in *Rigney* v. *City of Chicago, supra.* That was a case of the obstruction of a public street interfering with the access to property. It was decided that damages from such an injury were guaranteed by the constitution. It was held that if an obstruction did not practically affect the enjoyment or use of neighboring property, and thereby impair its value, no action would lie, but that if the owner sustained a special damage with respect to his property from such a cause in excess of that sustained by the public generally, the constitution required compensation. This rule was then laid down (p. 80) : "In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

The important question is to determine what is a special damage and injury, within the meaning of that and other cases. One thing that is clear is, that the damage must be a damage to property and not a mere personal inconvenience or injury, such as a damage to trade or business. (*Hohmann v. City of Chicago*, 140 Ill. 226.) If a right of action is merely personal, without reference to property, the constitution does not guarantee compensation. If the injury amounts only to an inconvenience or discomfort to the occupants of property, which would authorize a personal action but not affecting the value of the property, it is not within the provision. The injury must also be actual, susceptible of proof and capable of being approximately measured. It must not be merely speculative, remote, prospective or contingent. The special damage must be different in kind from that sustained by the general public, although it does not cease to be special because a considerable number are affected in the same way. (*City of Chicago v. Union Building Ass.* 102 Ill. 379.) The general public does not mean the people of the State at large or of some other town or city who are not affected at all by the improvement, but it means the people of the whole neighborhood, and if the damages differ only in degree from those suffered in common by such public, the injury is not within the provisions of the constitution. It is a matter of common knowledge that where bituminous coal is used by individuals, manufacturing establishments and railroads, the atmosphere is filled with smoke and more or less soot is deposited over the whole neighborhood or city. In populous communities no one escapes injury and annoyance from other causes, such as the dust raised in dry weather by teams and the noise of travel over stone pavements, and perhaps with loads which add greatly to the noise. Such things are inconveniences, but they are common to everybody and special to none. They affect every one who comes within their range, without regard to ownership of property. If it were not required that damages should be special to property, there would be no

stopping place in litigation and the number of infinitesimal injuries for which action could be brought would be unlimited.

The provision of the constitution must have a reasonable and practical interpretation, and cannot be extended to require compensation to every person in the community who can hear the noise of a train or be interrupted to some extent by it. Accordingly it was held in *Aldrich* v. *Metropolitan West Side Elevated Railroad Co.* 195 Ill. 456, that there could be no recovery for the usual noise and vibration attendant upon the operation of the railroad. In that case the declaration, in some of its counts, stated a good cause of action, charging obstruction of access to the premises, vibration and consequent damage to the property, but the evidence showed that there had been no direct physical disturbance of any right, public or private, which the plaintiff enjoyed in connection with her property. The road was not constructed in the street along plaintiff's property, injuring or destroying any right which she enjoyed in connection with it, and her damages were of the same kind as those sustained by the general public. The distinction between that case and the cases of· *Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke, supra,* and *Chicago, Peoria and St. Louis Railway Co.* v. *Leah,* 152 Ill. 249, was there pointed out. In the first of those cases, cinders, ashes and smoke were thrown and blown directly on the plaintiff's premises in considerable amount, and there was a direct physical injury to the property. In the other case the plaintiff was the owner of a piece of land fronting on a narrow street, twenty feet wide, which the railroad crossed diagonally opposite plaintiff's premises, from which it was distant at the nearest point six and one-half feet. The street afforded the only approach to the premises and there was a switch near by, and in both cases the premises were occupied for dwellings.

It is said by counsel for appellees that this case is the same as *Illinois Central Railroad Co.* v. *Turner,* 194 Ill. 575.

We think the distinction is quite clear. In that case the railroad was built in a street within a few feet of the plaintiff's property, on a sharp curve and considerable grade, and the passing engines and trains threw large quantities of smoke, dust and cinders upon the property and caused the building to vibrate and shake, resulting in great damage to it. Counsel also says that he is unable to distinguish between this case and the case of *Calumet and Chicago Canal and Dock Co.* v. *Morawetz,* 195 Ill. 398. In that case a railroad was constructed and operated in front of plaintiff's premises in a public street. There was a house on the property, occupied as a store and residence for families. There was a track and several switches at the corner and west of the house near the side door, where the tracks were within a few feet of the building. The passing trains threw smoke, soot and cinders directly into the house. Both cases come directly within the rules already stated.

If a part of a tract of land is taken for public use, compensation is to be made equal to the market value of the property so taken, and in considering the question of damages to the residue of the land not taken, all benefits and injuries which are real, and not merely speculative or imaginary, are to be taken into account and balanced against each other. The damages must be real, and not imaginary or speculative. (*Chicago and Pacific Railroad Co.* v. *Francis,* 70 Ill. 238.) But the nature of the use to which the property is applied, so far as it affects the remainder, must be considered. There would be an entirely different effect upon the residue where the land is taken for a public park or similar use than if taken for a noisy and offensive use,—at least if the premises were occupied for a residence. Noise, smoke and dust might make very little difference in the value of a foundry or machine shop, while a residence within a few feet of a railroad track might be greatly damaged. The same rule has been substantially applied where access to property by way of a public street has been interfered with

by building a railroad in the street. The right obstructed and interfered with in such a case is appurtenant to the land, and the nature of the obstruction and use is a proper subject of inquiry, as affecting the measure of damages. In such a case it is a natural inquiry what the nature of the obstruction is and what effect it and its use will have upon the property. Although the construction of a road is authorized by law, the corporation is not protected in the negligent and improper construction, nor is it exempt from liability for injuries for which an action would lie at common law against an individual. *Rigney* v. *City of Chicago, supra.*

The court, in instructing the jury, told them they could not allow any damages for cutting off the view, or danger to school children from getting on the track, but that the plaintiffs might recover for the casting of smoke, cinders and ashes on the premises, the vibration of the ground caused by passing trains, and loud and ominous noises disturbing the school. It is clear that these instructions did not cure the error of denying the motion to strike out the evidence which included improper elements of damage. The amount of the verdict conclusively demonstrates that fact. The $2500 damages allowed by the jury, and the judgment of $1800 entered after the *remittitur,* have no foundation in the legitimate evidence of damages for which an action could be maintained. The instruction authorizing a recovery for the vibration of the ground caused by passing trains was wrong for want of any evidence that the property was damaged in any manner thereby; and if the evidence would warrant an inference that there was any direct physical injury from smoke, cinders or dust, and that the smoke and noise were special injuries to the property as herein explained, the jury could not have returned the verdict or the court entered the judgment without considering and including the improper elements testified to by the witnesses. The building was about two hundred feet from the track and was not used for a residence, but was devoted to school purposes during certain

hours from September to April, inclusive. Neither the verdict nor judgment can be accounted for without including the improper testimony as to damages which the court refused to strike out, and the error was not cured by the instructions.

For the errors indicated, the judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

Afterwards, on December 7, 1904, upon a motion made by the appellees in the above cause to modify the judgment theretofore entered as the same relates to costs, the court, speaking further by Mr. Justice CARTWRIGHT, rendered the following additional opinion:

A judgment recovered by appellees, as trustees of schools, in this case, against the Illinois Central Railroad Company for damages to school property, was reversed and the cause was remanded for another trial. The clerk, in entering the judgment of the court, awarded an execution against the trustees, doubtless through inadvertence, as an execution can not issue or school property be sold on a judgment. The motion, so far as it relates to the execution, is allowed.

The motion further is, that no costs be taxed in the case, because, under the statute, no costs are taxable against trustees of schools. The provisions of section 1 of article 16 of the School law are, that no justice of the peace, constable, clerk of any court, sheriff or coroner shall charge any fees in a case where any school officer, school corporation or agent of the school fund sues for the recovery of the school fund or for any interest on the school fund. It is the view of the court that that statute does not apply to a suit of this character brought by trustees of schools to recover damages for injuries to school property. The motion as to that branch of the case is denied, as to costs.