(No. 2568— )

ALVIN G. CAESAR AND STELLA CAESAR, AS JOINT TENANTS AND NOT AS TENANTS IN COMMON, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1941:*

F. J. TECKLENBURG, for claimants.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Since September 30, 1929, the claimants, Alvin G. Caesar and Stella Caesar, have been the owners as joint tenants of the following described property, to wit: Lot Six (6) in Block Six (6) in "Twelve Oaks", in the City of Belleville, County of St. Clair and State of Illinois, according to the plat thereof recorded in the Recorder's Office of said St. Clair County (except a small triangular tract along the south side thereof).

On December 4, 1926, the Board of Supervisors of St. Clair County adopted a resolution selecting a system of State-Aid roads in said County, which said resolution was approved by the Department of Public Works and Buildings of the respondent on January 7, 1927.

Thereafter said Board of Supervisors selected as a part of said State-Aid system, a certain highway which extended

in an easterly and westerly direction along the south property line of the claimants' property, and which was laid out over a tract of land which had been previously owned by the Southern Traction Company, but was not being used for right-of-way purposes.

On December 20, 1933, the said Department of Public Works and Buildings awarded a contract for the construction of that part of said State-Aid Road which extended along the south line of claimants' lot, which said road thereafter was known as S. B. I. Route No. 13.

Said S. B. I. Route No. 13 was constructed in 1934, and in the construction thereof, there was a grade separation over the tracks of the Illinois Central Railroad Company. In connection with such grade separation, a viaduct was constructed over such tracks, with an embankment leading thereto, which started at grade near the center of Fifteenth Street and rose gradually to meet the west end of the viaduct, at which point the elevation was 22 feet above the level of the natural ground. At the east end of the claimants' lot the elevation was 11.3 feet above the level of the natural ground.

The highway right-of-way is 50 feet in width and the surface of the embankment consists of a concrete slab 20 feet in width together with clay shoulders approximately four feet in width adjoining the concrete slab. The embankment slopes at a steep angle to the southerly line of the claimants' lot.

Claimants' lot has a frontage of 50 feet on Fifteenth Street, which street extends in a northerly and southerly direction. Such lot is 130 feet in length and there is an alley at the rear thereof. The lot is improved by a five-room frame bungalow with bath, basement and furnace, with a garage near the rear of the lot.

Prior to the construction of the improvement in question, the garage was reached by way of the alley at the rear of the premises, but access to the alley was cut off by the embankment and at the the time of the construction of the highway improvement, the garage was turned around and raised approximately two feet, doors were cut in the west side thereof and a driveway constructed from the front of claimants' property along the southerly line thereof to such garage. The cost and expense of raising and turning the

garage as aforesaid amounted to $259.45 and was paid by the respondent.

The paved portion of the highway is approximately thirty feet from claimants' house. Claimants contend that the fair cash market value of the property has been depreciated by reason of interference with the access thereto, by reason of the discharge of water, debris and mud from the highway thereon, by reason of the vibration resulting from the traffic, which caused the cracking of the walls of the house; by reason of noise and dust; and by shutting off the light, air and view from their premises;—and also contended that they had been put to additional expense in filling up their lot and digging up various flowers and shrubs, and had also suffered the loss of certain grape vines and fruit trees.

The case of Jesse L. Rule, et al, No. 2570, decided at the present term of this court, involved damages to property in the same vicinity, and damaged by the same improvement. The facts in that case are much the same as in the case at bar and what we said in that case with reference to the legal questions involved, applies with equal force to the present case. In the consideration of that case, we said:

"Claimants' right of recovery is and must be based upon the provisions of Section 13 of Article 2 of the Constitution of this State which provides that private property shall not be taken or damaged for public use without just compensation.

"It is well settled that in cases of this kind, that is, in cases where private property is not taken, but is damaged for public use, the proper measure of damages is the difference between the fair cash market value of the property unaffected by the improvement and the fair cash market value thereof as affected by it. *Brand* vs. *Union Elevator Co.*, 258 Ill. 133; *Dept. of Public Works* vs. *Caldwell*, 301 Ill. 342; *Dept. of Public Works* vs. *McBride*, 338 Ill. 347.

"It is also well settled that the aforementioned constitutional provision was not intended to reach every possible injury that might be occasioned by a public improvement, and that to warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. *Rigney* vs. *City of Chicago*, 102 Ill. 64; *I. C. R. R. Co.* vs. *Trustees of Schools*, 212 Ill. 406; *Illinois Power and Light Corporation* vs. *Talbott*, 321 Ill. 538.

"Also, in order to warrant a recovery, the damage must be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the whole

neighborhood, the injury is not within the provisions of the Constitution. *City of Winchester* vs. *Ring*, 312 Ill. 544.

"Also, that the opinions of witnesses must be based on such elements as form a proper basis for the establishment of a depreciation in the fair cash market value of the property, and remote speculative or contingent injuries cannot be considered, as such elements are not recognized by the law as elements entering into the damages which may be allowed. That is to say, depreciation in market value will not sustain a claim for damages to land not taken unless such depreciation results from a cause which the law regards as a basis for damages. *Illinois Power & Light Corporation* vs. *Talbott*, 321 Ill. 538; *Rockford Electric Co.* vs. *Browman*, 339 Ill. 212.

"Also, that in cases involving damage to land not taken the burden of proof is upon the property owner to prove the damages claimed.

> *Illinois Power & Light Corp.* vs. *Barnett*, 338 Ill. 499;
> *East St. Louis Light Co.* vs. *Cohen*, 333 Ill. 218;
> *Illinois Power & Light Corp.* vs. *Talbott*, 321 Ill. 538.

"In this case there is no question but what the property of the claimant has been depreciated in value as the result of the construction of the improvement, and the only question for our determination is the extent to which the property has been depreciated as the result of elements which the law recognizes as proper elements in cases of this kind.

"The following have been recognized as proper elements of damage, to wit:

1. Interference With the Right of Access.
 > *Rigney* vs. *City of Chicago*, 102 Ill. 64;
 > *Barnard* vs. *City of Chicago*, 270 Ill. 27;
 > *Lydy* vs. *City of Chicago*, 356 Ill. 230.

2. Interference With the Natural Drainage, and Casting Mud and Water Upon the Premises.
 > *Nevins* vs. *City of Peoria*, 41 Ill. 502;
 > *City of Bloomington* vs. *Brokaw*, 77 Ill. 194;
 > *City of Bloomington* vs. *Pollock*, 141 Ill. 346;
 > *Fleming* vs. *E. J. & E. Ry. Co.*, 275 Ill. 486.

3. Interference With the Right to Have Light and Air From the Public Highway Unobstructed By Any Encroachment.
 > *Field, et al.* vs. *Barling*, 149 Ill. 556;
 > *Barnard* vs. *City of Chicago*, 270 Ill. 27;
 > *Gerstley* vs. *Globe Wernecke Co.*, 340 Ill. 270.

"In a number of railroad cases our Supreme Court has held that as to abutting property owners, the noise and vibration of passing trains; and the casting of smoke, dust, ashes and cinders upon the premises in a considerable amount, are proper elements of damage.

> *Nix* vs. *C. P. & St. L. Ry. Co.*, 137 Ill. 141;
> *C. M. & St. P. Ry. Co.* vs. *Darke*, 148 Ill. 226;
> *C. P. & St. L. Ry. Co.* vs. *Leah*, 152 Ill. 249;
> *I. C. R. R. Co.* vs *Turner*, 194 Ill. 575;
> *Calumet, etc. Dock Co.* vs. *Morawitz*, 195 Ill. 398;
> *I. C. R. R. Co.* vs. *Trustees of Schools*, 212 Ill. 406.

"In the case of *Aldrich* vs. *Metropolitan, etc., Elevated Railway Co.*, 195 Ill. 456, the railroad did not abut upon the plaintiff's property, and although some of the counts of the declaration stated a good cause of action, the court

held that the evidence failed to show any direct physical disturbance of any right, public or private, which the plaintiff enjoyed in connection with her property, and that the damages which she sustained were of the same kind as those sustained by the general public, and that therefore she was not entitled to recover therefor.

"Our attention has not been called to any case in which noise, fumes or dust arising from the usual automobile traffic upon a State Bond Issue Route have been considered proper elements of damage;—and under the evidence in this case we do not consider them such."

Three witnesses testified as experts on behalf of the claimants, and stated that in their opinion the fair cash market value of the claimants' property prior to the construction of the improvement was $4,275.33; that the fair cash value of the property after the construction of the improvement was $3,500.00; and that the property depreciated in value as the result of the construction of the improvement in question, to the extent of $775.33. No testimony was offered by the respondent on the question of the extent of the damage to claimants' property.

The court viewed the premises and we believe that the evidence in the record supports the opinions of the claimants' witnesses that the property was depreciated in value as the result of the construction of the improvement in the amount of $775.33.

The evidence shows that the property in question is encumbered by a mortgage to Belleville Savings Bank, Trustee, dated September 30, 1929, securing one note in the principal sum of $3,500.00; that on September 30, 1939, there was due the full amount of the principal of such mortgage, and interest in the amount of $105.00; that said mortgage on November 19, 1929, was assigned to Eleanor M. Gundlach, R. F. D., Belleville, Illinois, and that she is now the legal holder and owner of said note and the mortgage securing the same.

Award is therefore entered in the amount of Seven Hundred Seventy-five Dollars and Thirty-three Cents ($775.33), payable to Alvin G. Caesar, Stella Caesar, and Eleanor M. Gundlach.